GUIDRY, Judge.
Plaintiff, Hardy Droddy, filed this worker’s compensation action against Cliff’s Drilling, Inc. seeking benefits for permanent partial disability. Judgment was rendered on July 11, 1983, in favor of defendant dismissing Droddy’s demands with prejudice. Plaintiff has appealed.
The sole issue on appeal is whether the trial judge erred in finding that plaintiff failed to prove his permanent partial disability since January 8,1981, the date when defendant ceased paying worker’s compensation benefits.
On February 27, 1979, Droddy was employed as a floorhand by Cliff’s Drilling, Inc. and was working on a land-based oil rig in the Baton Rouge area. On that date, a board on which Droddy was standing slipped, causing him to fall approximately 18 feet onto a plank floor. Following his fall, Droddy went to the employer’s bunkhouse where he rested for several hours and then returned to work. A few days after the accident, Droddy went to the emergency room at a hospital in Zachary, Louisiana, complaining of pain in his left shoulder and left arm. The x-rays taken of his arm showed no evidence of any fractures. Droddy then returned to work and remained in defendant’s employ until April 18, 1979. The evidence is in conflict regarding whether he left work on the latter date because of his injury or because of his pre-accident plans to move to Massachusetts to do home missionary work for the United Pentecostal Church.
*628 On April 19, 1979, before leaving for Massachusetts, Droddy visited Dr. Etienne R. Brown, a general practitioner in DeRid-der, complaining of aches and soreness in his arms, chest and shoulder. Dr. Brown’s examination revealed some tenderness in these areas. Droddy was hospitalized for a brief period of time wherein a number of tests were performed on Droddy, including x-rays of Droddy’s cervical spine and forearms. The test results were all within normal limits.
Dr. Brown saw Droddy again on May 29, 1979. Dr. Brown concluded that Droddy was markedly improved. There was no evidence of any muscle spasms nor abnormal motion. Dr. Brown concluded that Droddy had recovered from the injury and was able to return to work as of that date.
After plaintiff moved to Massachusetts, he again sought medical help for the pain he was experiencing. On June 14, 1979, he was examined by Dr. Geoffrey W. McCarthy, a general practitioner in Westfield, Massachusetts. Dr. McCarthy found a slightly decreased range of motion in Drod-dy’s neck and a slight decrease in strength. Dr. McCarthy concluded that Droddy was suffering from chronic pain syndrome as a result of the injury. This suit was filed on June 28, 1979.
Dr. McCarthy examined Droddy on six subsequent occasions, the last being on September 16,1980. On this final visit, Dr. McCarthy noted that there was still some limitation of motion in the left side of the neck and minimal decrease in muscle strength of the left arm. He could not say for certain whether this was in fact a result of the injury or a sudden onset of arthritis in the neck. Dr. McCarthy opined that it was unlikely that Droddy would improve enough to engage in heavy work in the future.
On July 26, 1979, Droddy was examined by Dr. Stephen E. Paul, a neurologist recommended by Dr. McCarthy. Dr. Paul performed a cervical myelogram on Droddy which showed only mild abnormality. Dr. Paul found some tenderness in Droddy’s neck and irritation to some of the cervical nerves. He recommended that Droddy undergo treatment by a physical therapist. Droddy was re-examined by Dr. Paul on September 17, 1979. On this visit, Droddy expressed some relief from pain as a result of the physical therapy. Following this visit, Dr. Paul discharged Droddy from his care.
Droddy returned to Dr. Paul on November 27, 1979 complaining of a recurrence of his pain. At this time, Dr. Paul considered surgery, however, this course of action was deemed unnecessary when a subsequent examination in February of 1980 showed marked improvement in Droddy’s condition. Dr. Paul’s final examination of Droddy was in October of 1980. Dr. Paul stated in his deposition that:
“... I had some mild suspicions in February of 1980, that possibly his complaints were either exaggerated or in some way distorted from the actual physical findings. But I must say, that was strictly a subjective opinion on my part; and as far as I was concerned there was nothing really to substantiate that viewpoint. I was somewhat puzzled, because I had expected to find that, in fact, his symptoms would be worsened; and I did not find that in February. I found that his symptoms were better — or his findings were better but that his symptoms were either the same or worse. And I thought that was a significant disparity.”
When asked whether he felt Droddy was a malingerer, Dr. Paul responded:
“That is a diagnosis I considered; and I can’t answer that question directly; because I have not formed an opinion with regard to that. I certainly did consider it along the way and would still consider it; but I’m not absolutely convinced that he is.”
Dr. Lang of Lahey Clinic examined Droddy in May of 1980, finding no abnormalities on his neurological examination. He advised Droddy to seek relief from a pain clinic.
At the defendant’s request, Droddy was examined by Dr. David Goldberg, an ortho *629 pedic specialist, in December of 1980. Dr. Goldberg noted mild spasms of the para-spinal muscles in the lumbar region but stated that Droddy “shows no evidence of being in acute distress.” He concluded the examination with the opinion that there were no residuals from the 1979 injury. Dr. Goldberg stated that, “I can find no evidence of objective findings to substantiate this patient’s subjective complaints.”
Upon receipt of Dr. Goldberg’s report in January of 1981, defendant terminated the worker’s compensation benefits which had been paid to Droddy since April of 1979.
Dr. Norman P. Morin, an orthopedic surgeon in Lake Charles, examined Droddy on three separate occasions. On January 7, 1980, Dr. Morin found some tenderness in the neck area and some mild muscle spasm. Dr. Morin found no muscle spasm present on his second examination of Droddy on February 2, 1981. He ruled out any possibility of disc injury on this visit. The November 22, 1982 examination of Droddy also showed a lack of muscle spasms. Dr. Morin expressed the opinion that Droddy was exaggerating the limited range of motion in his neck and stated that “some of his complaints were just out of line to what we found clinically, and they were rather weird.” He explained what he meant by “weird” as follows:
“I don’t know him well enough to say it is due to psychiatric overlay or due to the fact that he is faking his complaints. I would like to point out to the Court that some of the findings just don’t add up; they seem to contradict one another, so-to-speak. This is what I mean by weird.”
In March of 1981, Droddy sought the advice of another orthopedic surgeon. He was examined by Dr. Richard M. Kane, who found his condition to be essentially normal except for a markedly limited range of motion. Dr. Kane felt that this limitation of motion was “partially effort related.” He found no abnormalities in Drod-dy’s myelogram and encouraged Droddy to keep working. Dr. Kane opined that there was no physical disability preventing Drod-dy from working. Dr. Kane recommended a pain clinic due to the possibility of neurosis. Droddy’s second visit to Dr. Kane in May of 1981 produced basically the same findings.
In December of 1981, Droddy gave up his missionary efforts due to lack of participation and returned to Louisiana.
Dr. Harper Willis, Jr., a psychiatrist and neurologist, performed a psychiatric evaluation on Droddy on September 25, 1981. Dr. Willis found that Droddy had much anxiety and depression but did not find any phychosis present. He diagnosed Droddy’s condition as being a mixed type of psychoneurosis, whereby Droddy would be unable to function in any kind of work situation. He did find Droddy’s reflexes, muscle strength and range of motion to be normal.
Dr. Willis again examined Droddy on November 13, 1982. Dr. Willis diagnosed that Droddy had chronic pain in his left arm and neck area. Dr. Willis noted that Droddy’s depression was deepening and that he was “feeling desperate about supporting his family.” Dr. Willis admitted that there were other possible causes for Droddy’s depression other than his 1979 injury, such as: the economic crunch and Droddy’s lack of employment; the failure of his work as a missionary; and, the tendency Droddy has to deny his emotional problems and to focus such on his physical pain. Dr. Willis was of the opinion that Droddy would not be able to return to any kind of productive work until he obtained some relief from the pain he was experiencing.
In January of 1982, Droddy obtained employment as a college bus driver. He retained this job until May of 1982. He later started driving an 18-wheel pulpwood truck which work he was performing at the time of the trial.
At defendant’s request, Droddy was examined by Dr. Gilíes R. Morin, a psychiatrist in Lake Charles, on January 19, 1982. Dr. Morin’s psychiatric evaluation resulted in a finding that Droddy had a mild to moderate depressive neurosis. Dr. Morin felt that such neurosis was not caused by the trauma of the 1979 injury, but was due *630 to Droddy’s religious upbringing. Dr. Morin noted that plaintiff lacked the fundamental symptoms of depression, which are weight loss and insomnia. He concluded that Droddy’s level of depression should not prevent him from returning to full time employment. Dr. Morin characterized Droddy as follows:
“He is a rigid person who may react to anxiety with phobias, compulsions, or obsessive runimation (sic). Chronic tension and excessive worry are common and resistance to treatment may be extreme despite obvious distress.”
Droddy’s final psychiatric examination took place on March 10, 1983, by Dr. William P. Cloyd, Jr. of Lafayette. Droddy was still complaining of pain in his left arm, neck and lower back. He also complained of dizzy spells and “feeling bad in general.” Dr. Cloyd’s psychiatric examination resulted in a diagnosis of depressive neurosis, and indicated a causal relationship between Droddy’s emotional state and the accident. His sole advice to Droddy was to seek relief at a pain clinic. Dr. Cloyd made the following observation of Droddy, “he denied any particular feelings of intense depression, which I felt that considering the degree of problems he has had and that he’s had since the period of 1979, to me appeared almost inappropriate.” Although Dr. Cloyd concluded that the accident was the main factor responsible for Droddy’s condition, he was unable to rule out other possible factors, such as the failure of Droddy’s missionary work in Massachusetts; Droddy’s inability to provide for his family; and, Droddy’s concern for his youngest son who was arrested on drug charges while Droddy and his wife were in Massachusetts. Dr. Cloyd’s opinion was that Droddy was unable to return to his former work in the oilfield.
Plaintiff contends that the lower court erred in failing to find that he is permanently partially disabled because of a depressive neurosis caused by his work related accident.
In Andrus v. Rimmer & Garrett, Inc., 316 So.2d 433 (La.App. 3rd Cir.1975), this court stated:
“Where a claimant seeks workmen’s compensation for neurotic disability, traumatic neurosis, et seq., such condition must be proven, as in any other disabling injury, by a preponderance of the evidence. Such condition must not only be shown to exist but also that it was causally connected with the work related accident. Thomas v. St. Patrick’s Hospital, 276 So.2d 749 (La.App. 3rd Cir.1973); Muse v. Sentry Insurance Company, 269 So.2d 609 (La.App. 3rd Cir.1972).
“Our jurisprudence has further indicated that in such cases the court must proceed with utmost caution and exercise extreme care in view of the nebulous characteristics of such a condition and the possibility of the symptoms being easily feigned. The evidence in cases of this nature should be scrutinized carefully and every precaution taken to protect employers and insurers against unjustified claims because of alleged mental affliction. Messex v. Georgia-Pacific Corporation, 293 So.2d 615 (La.App. 3rd Cir.1974); George v. Lafayette Well Service, Inc., 249 So.2d 212 (La.App. 3rd Cir.1971); Boutte v. Mud Separators, Inc., 236 So.2d 906 (La.App. 3rd Cir. 1970); Jackson v. International Paper Co., 163 So.2d 362 (La.App. 3rd Cir. 1964).”
In the present action, the trial judge found that Droddy failed to meet his burden of proof. It is evident that the trial judge accepted the opinion of Dr. Morin over those propounded by Drs. Willis and Cloyd. Our examination of the record has not revealed that he clearly erred in doing so. As we noted in Andrus v. Rimmer & Garrett, Inc., supra:
“The evaluation of the credibility of witnesses is peculiarly within the trial judge’s domain. In addition, the amount of weight placed by the trial judge on expert testimony, and the findings of fact in this regard, are entitled to great weight on appeal.”
*631 In his thorough and well reasoned written reasons for judgment, the trial judge concluded that:
“Viewed in the light of all the evidence in the ease, the testimony of Dr. Willis and Dr. Cloyd is not very convincing. They concluded that Mr. Droddy has a neurosis which disables him from doing heavy work, but in reaching that conclusion they seem to assume or take for granted that he has some organic or physical disability which causes him to have chronic pain which, in turn, causes depression and anxiety. In their testimony they emphasize the importance of the physical pain and they state that psychotherapy will not help the depressive neurosis until the cause of the pain is eliminated. Yet, as detailed above, numerous other doctors who saw Mr. Droddy over an extended period of time said they found no organic basis for the pain. Several of those doctors found that Mr. Droddy was exaggerating his complaints and felt that they were on a psychological basis, either consciously or subconsciously.
Also in evaluating the testimony of Dr. Willis, the Court has to consider that on September 25, 1981, he was firmly of the opinion that Mr. Droddy was unable to function in any kind of work situation and would not be able to return to any kind of productive work until he had some relief from his pain. But in January, 1982, Mr. Droddy started driving a school bus between Merryville and Lake Charles. A few months later he became employed as a truck driver and was still working in the capacity at the time of the trial. When Dr. Willis saw Mr. Droddy again on November 13, 1982, and learned that plaintiff had driven a bus for several months and was then driving a truck, he expressed doubt that Mr. Droddy would be able to continue driving a truck because of the pain it was causing him. But not only did Mr. Droddy continue to drive a truck, after a while he started driving a much larger truck — an 18-wheeler hauling pulpwood eight to twelve hours a day.”
Plaintiff argues in brief that, “the lower court’s de facto finding that plaintiff was a malingerer is not only not supported by the record, but totally in contradiction to the testimony of all three psychiatrists who testified at plaintiffs trial.” Plaintiff over emphasizes the issue of whether or not Droddy was a malingerer. The determinative factor in this case is whether Droddy proved by a preponderance of the evidence that he was partially disabled as a result, of traumatic neurosis. The psychiatric testimony differed as to the cause of plaintiffs depression and its severity. The trial court chose to rely on Dr. Morin’s testimony as to these factors and concluded that Drod-dy’s depression was not of a disabling nature and would not prevent him from engaging in his former line of work. Dr. Morin noted that Droddy did not suffer from insomnia or a lack of appetite, the classic symptoms- of depression. These factors are indicative of the mildness of plaintiff’s depression. Although Drs. Willis and Cloyd opined that the depression was caused by the work related injury, they were unable to rule out the possibility that the depression could have alternatively been brought about due to plaintiffs failure in his missionary effort in Massachusetts or his family problems. The trial court’s ultimate conclusion, relying on the opinion of Dr. Morin, is unquestionably compatible with the other medical evidence and the factual evidence which reflects that Droddy has functioned satisfactorily in a work situation since January of 1982.
For the above reasons, the judgment of the trial court is affirmed. Appellant is cast for all costs of this appeal.
AFFIRMED.