471 So.2d 223 (1985)
Hardy DRODDY
v.
CLIFF'S DRILLING, INC.
No. 84-C-2078.
Supreme Court of Louisiana.
June 17, 1985.
Rehearing Denied September 9, 1985.
*224 Robert C. McCall, Bagert, McCall & Rainer, Cameron, for applicant.
David A. Fraser, Brame, Bergstedt & Brame, Lake Charles, for respondent.
BLANCHE, Justice.
Plaintiff, Hardy Droddy, filed this worker's compensation action against Cliff's Drilling seeking benefits for permanent partial disability. The trial court found in favor of the defendant and the Third Circuit Court of Appeal, 458 So.2d 627, affirmed that decision. We granted writs to review those judgments, 462 So.2d 646.
There is no dispute that the plaintiff was injured when he fell approximately 18 feet on February 27, 1979, while working as a floorhand on a land-based oil rig near Baton Rouge.[1] The plaintiff did not seek medical attention until two days later when he went to a nearby emergency room complaining of pain in his left arm and left shoulder. He was released when the xrays showed no fractures. Droddy returned to the job and continued to work on the oil rig until April 19, 1979. At that time, the defendant began paying Droddy worker's compensation benefits at the rate of $141 per week.
The plaintiff brought this suit after worker's compensation benefits were terminated on January 8, 1981. He claims that he is permanently partially disabled as a result of the accident of February 27, 1979. He contends that he still experiences severe pain in his upper left extremity and he can no longer do the heavy manual labor required in oilfield work. Droddy also asserts that the severe pain that he feels from his injuries has caused him to develop a depressive neurosis. The depression serves as an emotional overlay of the original physical injury and enhances his pain to the point that he is unable to do certain types of work.
The defendant contends that while the medical evidence indicates that the plaintiff was injured originally, all of the physical symptoms which substantiated his earlier complaints of pain, have disappeared. There are no longer any objective findings to substantiate the plaintiff's continued complaints of pain. The defendant also argues that the plaintiff has not proven that his depression is causally related to the accident.
The trial court after a thorough review of the doctors' testimony, all of which was submitted through written reports or depositions, concluded that the plaintiff's complaints of pain were just not compatible with the medical and factual evidence presented. If the plaintiff was in pain, be it from physical or psychological reasons, the pain was not so substantial so as to render him permanently partially disabled.
The court of appeals also denied compensation benefits to the plaintiff after reviewing the medical and factual evidence. That court found that the depressive neurosis did not partially disable the plaintiff and that he could return to work.
The trial court and the court of appeal did an excellent job of reviewing and setting forth the evidence presented at trial in their respective opinions. The opinions show that plaintiff failed to prove through the testimony of various internists, orthopedists and neurologists that there was a physical reason for his claim of disability after his compensation was discontinued. Two neurosurgeons and three orthopedic surgeons found that there were no physical or objective findings to justify the plaintiff's complaints of pain after January, 1981. While none of the doctors could label the plaintiff as a malingerer or find *225 that he was lying about his pain, one doctor described his limitation of motion as "partially effort related". Another doctor found that his complaints of pain were "weird" and out-of-line with his symptoms.
On the other hand, the plaintiff did prove through the testimony of the three psychiatrists that he was not malingering or misrepresenting his symptoms of pain and was disabled from doing heavy physical labor because of that pain.[2] A plaintiff's disability will be presumed to have resulted from an employment accident if the plaintiff was in good health before the accident, but commencing with the accident the symptoms of the disabling condition appear and manifest themselves continuously afterwards, provided that there is some reasonable possibility of a causal connection between the accident and the disabling condition. Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980). When an accident and resulting disability occur without an intervening cause, the accident is presumed to have caused the disability. Guillory v. U.S. Fidelity and Guar. Ins. Co., 420 So.2d 119 (La.1982). This presumption can be rebutted, but its effect is to shift the burden of proof to the defendant. Hammond v. Fidelity and Casualty Co. of N.Y., 419 So.2d 829 (La.1982). There is no question that the plaintiff was injured when he fell 18 feet from the drilling platform. The plaintiff proved that he commenced to experience pain a short time after this accident and that this pain continued until the time of trial. Further, the plaintiff proved that as a result of this pain and his inability to work, he developed a depressive neurosis.[3] There was no evidence that the plaintiff was depressed prior to the accident. As the plaintiff proved that both the pain and the depression commenced a short time after the accident and that the plaintiff was still in pain and still depressed at the time of the trial, he established a presumption that his disability was caused by the accident. Guillory v. U.S. Fidelity and Guar. Ins. Co., supra. The burden shifted to the defendant to prove that the pain and depression were caused by something other than the work-related injury.
The defendant failed to rebut this presumption. The evidence establishes that more likely than not the cause of the plaintiff's pain and depression was the work-related injury. Dr. Harper Willis and Dr. William Cloyd, two of the three psychiatrists who examined the plaintiff, were of the opinion that there was a causal relationship between the depressive neurosis and the physical injuries received in the accident. The depression serves as an emotional overlay of the physical injury and enhances the pain to the point that the plaintiff is unable to do heavy physical work. The psychiatric evidence indicates that the plaintiff's personality makes him particularly prone to depression. He is a rigid man, religiously-oriented and who finds it difficult to express anger. The anger or depression Droddy felt because he could not earn a living for his family would be turned towards himself and he would tend to develop physical symptoms.
The trial and appellate courts chose to rely on the testimony of the defendant's psychiatrist, Dr. Giles Morin, in finding that the plaintiff was not disabled. After he testified as to the plaintiff's neurosis with its accompanying symptoms of pain, Dr. Morin opined that the neurosis was not caused by the accident or the pain, but rather it was related to a failed missionary effort and family problems. We are of the opinion that it was error for the lower courts to rely on Morin's testimony as his position completely excludes the possibility *226 that the plaintiff's pain and inability to work played any part in causing the depressive neurosis. Dr. Morin's belief that the pain and depression were totally a result of his personal problems ignores the fact that the plaintiff's pain was with him before his missionary journey in Massachusetts and before the emergence of his family problems with his son.[4] While it is possible that the personal problems contributed somewhat to the plaintiff's depression, we are of the opinion that the defendant did not overcome the presumption that the plaintiff's pain and resulting depression were related to the accident as the evidence indicates that the plaintiff's symptoms of disability occurred almost immediately after the accident and continuously persisted until the time of trial. We find that the plaintiff is permanently partially disabled as a result of the fall from the drilling platform and as the plaintiff's pain and its accompanying depression prevent him from doing the heavy physical labor associated with oilfield work that he was capable of doing prior to the accident.

DECREE
The trial and appellate court judgments are reversed and the case is remanded to the trial court for a determination of the compensation benefits due the plaintiff.
REVERSED AND REMANDED
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
The so-called presumption used by the majority in this case and in prior jurisprudence is an incorrect application of evidentiary rules. The correct view is that this is a circumstantial evidence case, and the circumstances that plaintiff did not suffer from depression prior to the accidental injury and that he was seriously depressed after the injury give rise to the inference that the accident caused the depression.
Nevertheless, the plaintiff, as in any other circumstantial evidence case, has the ultimate burden of proof. The overall evidence, both direct and circumstantial, must establish that the accident, more probably than not, caused the depression.
The overall evidence, viewed in the light most favorable to the party who prevailed in the trial court, does not preponderate in favor of a conclusion that the accident caused the depression. The decision of the lower courts should be affirmed.
NOTES
[1] When he took the job with the defendant, Droody had plans to go to Massachusetts in May, 1979 to start a church at Westfield.

He went to Massachusetts, but after two years his church failed and he returned to Louisiana. There is testimony in the record which indicates that Droody's return to Louisiana was partially influenced by the fact that his youngest son was arrested and convicted of drug charges in Beauregard parish.
[2] The plaintiff took three Minnesota Multi-Phastic Personality Inventory (MMPI) tests which are a statistical psychological test and are designed to qualify the extent to which he is being truthful in his response. All three tests indicated that the plaintiff was being truthful when he said he was in pain.
[3] All three of the psychiatrists who examined the plaintiff agreed that the plaintiff had a moderate depressive neurosis.
[4] On cross-examination even Dr. Morin admitted that the plaintiff's depression might have been a result of guilt from his inability to earn income for his family after the accident although he continued to insist that the accident itself was not the cause of the depression. Morin tried to distinguish between psychological problems caused by the accident itself and those caused by the events which followed the accident.