ALFORD, Judge.
This is an action for worker’s compensation benefits and statutory penalties and attorney fees under the Louisiana Worker’s Compensation Act. Following a trial on the merits, the trial court rendered judgment dismissing the claims of plaintiff/appellant, Tommy Lott.
FACTS
In its written reasons for judgment, the trial court accurately summarized the following facts and medical testimony:
Mr. Lott claims that on July 28, 1983, he was standing on a scaffold laying kiln brick when his foot skidded and he felt a pop in his neck and immediate stiffness. He testified that he was reaching overhead about one foot when the incident occurred. He continued working and reported the incident on July 30, 1983.[1]
Mr. Lott saw several physicians and on October 5, 1983, saw Dr. Thomas B. Flynn, a neurological surgeon. Subsequently, on February 28, 1984, Dr. Flynn performed a single level anterior cervical diskectomy and fusion at C5-C6. He was discharged from the hospital on March 2, 1984. Mr. Lott saw Dr. Flynn several times post surgery and on April 12, 1984, Dr. Flynn found the bone graft to be in good position and alignment. He [Dr. Flynn] felt things were going smoothly.
He [Mr. Lott] was seen on May 3,1984 [by Dr. Flynn], complaining of low back and low neck pain that started after doing house chores, including moving some furniture [and mowing the lawn]. Physical therapy and x-rays were prescribed. The x-rays revealed the graft in good position and the fusion progressing.
On June 18, 1984, Mr. Lott complained of neck pain and was concerned about his recovery. He was seen on July 12, 1984, after having worked for three days and stated he was unable to work. Mr. Lott was hospitalized for physical therapy and observation.
X-rays and a CAT scan were taken during this hospitalization. The x-ray [sic] showed a healing fusion and the CAT scan showed the fusion to be in good position. The scan also revealed a mild bulge at C4-5 which did not impinge on any nerve roots.
On August 9, 1984, Mr. Lott was complaining of sleepiness of his hands and right leg. Dr. Flynn examined Mr. Lott and informed him that there was no objective evidence that he had any disability and he should return to his usual and ordinary occupation without restrictions.
Dr. Flynn saw Mr. Lott again on September 20, 1984, at which time Mr. Lott was employed and it was suggested that he continue his employment.
*474 After the September 20, 1984 examination by Dr. Flynn, Mr. Lott worked as a brick layer in October, November and December, 1984....
On November 15, 1984, Mr. Lott, visit-, ed Kenneth E. Vogel, a practicing neurological surgeon in New Orleans, Louisiana, complaining of difficulty with his neck and left arm pain. Dr. Vogel testified he had previously treated Mr. Lott in 1980 following a lumbar laminectomy that was performed in 1978. According to Dr. Vogel, the November 15, 1984 examination revealed mild limitation of motion in the neck with mild muscle spasm on the left, moderate brachial plexus tenderness. The motor examination revealed a diminution of the left grip. Also, there was some algesia of the first and second fingers of the left' hand, a diminution of the left biceps reflex, and point tenderness of the lower cervical facets bilaterally on the left, and the remainder of the examination was considered to be within normal limits.
Dr. Vogel felt the findings, were probably attributed to post-operative effects of the angiocervical fusion performed by Dr. Flynn. His examination of the prior x-rays and EMG revealed an anterior cervical fusion at C5-6; a mild defect at C4-5 on the right and that C6-7 was normal. Also he felt the myelogram of September 9, 1983, was normal and the CAT scan of October 18, 1983, had a cervical defect at C5-6 on the left, which was corrected by Dr. Flynn’s surgery of, February 28, 1984.
Mr. Lott saw Dr. Vogel again on December 20, 1984, complaining of continued neck and left arm pain which he described as being more severe than pri- or to the February 28, 1984 surgery by Dr. Flynn. Dr. Vogel offered hospitalization and further evaluation. He entered the Mercy Hospital on January 9, 1985.
Dr. Vogel stated that due to Mr. Lott’s allergy to iodine, contra[s]t studies could not be performed. Plain x-rays with saline were performed. The x-ray did not demonstrate anything different than the prior x-rays studied. A diskogram reproduced pain at C4-5. Dr. Vogel stated that he suspected the C4-5 level was the symptomatic level and offered an angio-cervical fusion at that level which was accepted.
Dr. Vogel described his surgery as uneventful and discharged Mr. Lott from the hospital on January 19, 1985. After surgery Mr. Lott was given a rehabilitation program. He was seen in March 1985 and at the visit of April 23, 1985, Dr. Vogel described him as progressing satisfactorily, although complaining of mild neck pain. He: was seen again on September 26, 1985, for neck, left arm and low back pain radiating in the right leg. An examination of the neck revealed mild limitation of motion without muscle spasm. There was no tenderness in the brachial plexus; the grip normal and reflexes were described as normal. There was mild algesia (numbness) of the fourth and fifth fingers of the left hand. An examination of the back was performed but not related to the cervical injury.
Dr. Vogel saw Mr. Lott again on November 19, 1985, for neck and low back pain. He was advised to continue conservative care and return on a [sic] as-needed basis. Mr. Lott advised Dr. Vo-gel he had returned to work on a part-time basis. Dr. Vogel has not seen Mr. Lott since November 19, 1985.
On releasing Mr. Lott to return to work in July 1985, Dr. Vogel assigned him a 5-10% medical impairment of his body as a whole, which he noted was in addition to the percentages of disability assigned following his two prior surgeries.[2] Also Dr. Vogel recommended that Mr. Lott avoid lifting, pushing or pulling on a repetitive basis more than thirty pounds and avoid bending, flexing or hyperextending his neck repetitively.
*475 It was stipulated at trial that Mr. Lott was paid compensation benefits in the amount of $230.00 per week from July 28, 1983 through September 15, 1984, a total sum of $13,110.00. The worker’s compensation insurer of Reintjes[3] paid all medical expenses incurred by Mr. Lott through September 20, 1984, totaling $15,108.97. Donna Phillips, the worker’s compensation supervisor handling Mr. Lott’s claim for the insurer at that time, testified at trial that further benefits were denied Mr. Lott on the basis of Dr. Flynn’s release of Mr. Lott to return to work. Although, Ms. Phillips admits receiving medical records concerning the surgery performed by Dr. Vogel, she maintained that it was the insurer’s position that the January 1985 surgery was not related to the July 1983 injury.
Appellant asserts on appeal that he is entitled to recover supplement earnings benefits under La. R.S. 23:1221(3)(a) subsequent to September 15, 1984, plus medical expenses in the amount of $11,135.27, and penalties and attorney fees under La. R.S. 23:1201.2.
1985 SURGERY
At the trial on the merits, a dispute developed over whether Mr. Lott sustained his injury before or after work was begun on July 28, 1983. The trial court found that, “(w)hether Mr. Lott was reaching up or laying a brick is of no consequence, for either justifies this court in finding that an accident occurred which is coverable by the Worker’s Compensation Act.” We can find no manifest error in the trial court determination that the initial injury was a work-related injury compensa-ble under the Act. However, the trial court conclusion that an intervening cause existed for the January 1985 surgery is clearly wrong based on the law and the evidence.
Mr. Lott testified at trial that the surgery performed by Dr. Flynn provided him with no relief from his persistent pain. Mr. Lott further testified that Dr. Flynn indicated to him that he had done all he could do in treating his symptoms, so thereafter he consulted Dr. Vogel. Mr. Lott testified that he was not involved in any other accident subsequent to the surgery performed by Dr. Flynn and prior to the surgery by Dr. Vogel. However, in May 1984 he did acknowledge helping his wife move a twelve pound chair at home and feeling pressure and pain in his neck while pushing his lawn mower. On the basis of these facts together with Dr. Flynn’s opinion that in order for the subsequent anterior cervical fusion at the C4-5 level to have been warranted that “it would have to be something that occurred later” as opposed to being' caused by the 1983 injury, the trial court determined that the household chores performed in May 1984 constituted an intervening cause.
It is well-settled that when a work-related injury is subsequently exacerbated, the aggravation is regarded as a development of the initial accident, and not an intervening cause, even though it occurs away from the employer’s premises after employment has terminated. Stewart v. Hospital Affiliates International, Inc. of Baton Rouge, 404 So.2d 944 (La.1981); Bolden v. Georgia Casualty & Surety Co., 363 So.2d 419 (La.1978); Simon v. Commercial Union Assurance Co., 389 So.2d 1367 (La.App. 3d Cir.1980). We find that any intensified symptoms suffered by Mr. Lott following the performance in May 1984 of household chores were merely an aggravation of the initial 1983 injury.
Dr. Vogel opined that, based on the history of Mr. Lott’s injury, considering his persistent complaints of pain following the surgery performed by Dr. Flynn, the May 1984 incident was an aggravation of the pre-existing problem. Dr. Vogel further testified that the herniated cervical disc for which he performed the angiocervical fusion was, in all medical probability, related to the July 23, 1983 injury. While Dr. *476 Flynn admitted that a mild midline and rightsided bulge of the disc at C4-5 was described following the CAT scan he ordered in July 1984, he did not find it significant. In spite of his opinion, Dr. Flynn was unable to say that the C4-5 disc was not injured in the July 1983 accident. Consequently, we find that Mr. Lott is entitled to recover the medical expenses related to his treatment subsequent to September 1984,: stipulated at trial to be $11,135.27.
WORKER’S COMPENSATION BENEFITS
While the evidence reflects that Mr. Lott worked during the months of October, November and December of 1984, following the January 1985 surgery, he was not released to return to work until July 1985. Mr. Lott claims as a consequence of his injury he is unable to earn ninety percent of the wages he was earning at the time of the injury and therefore is entitled to supplemental earnings benefits for the remainder of his life under La.R.S. 23:1221(3)(a).[4] The evidence does not support such an award. Although Dr. Vogel placed certain restrictions on Mr. Lott’s work-related activities, he felt Mr. Lott was capable of returning to his previous employment. Nor has Mr. Lott sufficiently established that because of his physical limitations resulting from the accident at issue, he is unable to earn ninety percent of his former wages. Accordingly, we find Mr. Lott is not entitled to collect supplemental earnings benefits.
The record does support the finding that Mr. Lott suffered temporary total disability from January 9, 1985 through July 9, 1985. La.R.S. 23:1221(1) provides as follows:
(1) Temporary total. For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
We find Mr. Lott is entitled to recover temporary total disability for the six month time period previously indicated, in accordance with La.R.S. 23:1221(1) but subject to the limitations imposed by La.R.S. 23:1202.
PENALTIES AND ATTORNEY FEES
Since the defendant/insurer terminated benefits pursuant to the report of Dr. Flynn indicating that Mr. Lott was able to return to work without physical limita-. tion, the termination of benefits was not arbitrary and capricious. However, following the submission by Mr. Lótt of the medical reports of ,Dr. Vogel and medical records substantiating his hospitalization, the failure to resume payment of benefits was arbitrary and capricious. Where the employer subsequently receives objective evidence indisputably showing a claimant to be disabled, the employer cannot rely on a prior medical report and on this basis avoid penalties and attorney fees for arbitrary failure to reinstate compensation benefits. Rodney v. Crown-Zellerbach Corp., 470 So.2d 538 (La.App. 1st Cir.1985); Alexander v. Department of Culture, Recreation and Tourism, 410 So.2d 1286 (La.App. 3d Cir.1982). After receiving the documentation submitted by Mr. Lott and his request for additional benefits, Donna Phil *477 lips (who handled the claim for the compensation insurer) admitted that she did not attempt to contact any of the physicians involved to inquire as to whether the 1985 surgery was related to the 1983 injury; rather, the decision not to resume payment of benefits was based on the medical records on file and the apparent inconsistencies therein.
Accordingly, Mr. Lott is entitled to recover twelve percent penalties on the compensation payable in accordance with La.R.S. 23:1201, as well as the reasonable attorney fees paid for the prosecution and collection of the claim in accordance with La.R.S. 23:1201.2.
For the foregoing reasons, we reverse the judgment of the trial court and remand to the trial court for a determination of the amount of benefits to which Mr. Lott is entitled, and also, for a determination of the date from which the statutory penalties and attorney fees are to be awarded and the amount of the attorney fee.
All costs of this appeal are to be borne by the defendants herein.
REVERSED AND REMANDED.

. It should be noted that at the time of the accident, Mr. Lott was employed and working for the defendant, Reintjes Industrial Services of Louisiana, Inc. (hereinafter referred to as "Reintjes”).

. As previously noted, Mr. Lott underwent a single level anterior cervical diskectomy and fusion performed by Dr. Flynn on February 28, 1984 and a lumbar laminectomy performed by Dr. Vogel in 1978.

. Suit was originally filed against Fireman’s Fund Insurance Co., the worker’s compensation insurer of Reintjes. Although the defendant filed its answer as: “American Insurance Co. (one of the Fireman’s Fund companies)’’, the petition of plaintiff was not amended. In addition, the parties stipulated at trial that American Insurance Co. paid the expenses of Mr. Lott prior to September 1984.

. La.R.S. 23:1221(3)(a) provides:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).