569 So.2d 178 (1990)
Edward WARREN
v.
H & W STEEL ERECTORS INC., et al.
No. CA 89 1105.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
*180 H. Gregory Briese, Bogalusa, for plaintiff-appellee Edward Warren.
Raymond D. Maher, Jr., New Orleans, for defendants-appellants H & W Steel Erectors Inc., et al.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
In this worker's compensation suit, defendants-appellants, H & W Steel Erectors, Inc., a/k/a United Steel Erectors, Inc. (H & W) and National Union Fire Insurance Company (National Union) appeal from a judgment decreeing plaintiff-appellee, Edward Warren, to be entitled to total and permanent disability benefits under Louisiana Worker's Compensation Act, La-R.S. 23:1021, et seq., along with penalties and attorneys' fees.
During trial, the parties stipulated that plaintiff suffered an injury in the course and scope of his employment with H & W. Mr. Warren worked for H & W as a steel rod tier. He injured his back while lifting a steel rod on September 14, 1984. A few days after the accident, plaintiff consulted his family physician, Dr. Mark L. James, due to back pain. Dr. James treated plaintiff conservatively with muscle relaxers, anti-inflammatory drugs, and physical therapy. Plaintiff's pain continued and Dr. James referred plaintiff to Dr. Joseph A. Kott, a neurosurgeon. Dr. Kott first examined plaintiff on October 24, 1984. Plaintiff complained of back pain, leg pain and mild neck pain. Dr. Kott's neurological exam revealed muscle spasms in the lumbosacral region. Plaintiff was hospitalized for traction, which lasted about one week. Upon plaintiff's discharge from the hospital, his pain continued. Despite the pain, plaintiff returned to work from November 19, 1984 through January 14, 1985. Plaintiff was hospitalized again on January 21, 1985 for a myelogram and a CT scan. After viewing these tests, Dr. Kott's diagnosis was a soft tissue injury. He recommended no surgical intervention but prescribed continued physical therapy. As of this time, Dr. Kott indicated there was no objective reason why plaintiff could not return to work, but he also stressed that plaintiff's pain may have prevented him from working.
Plaintiff sought a second opinion from another neurosurgeon, Dr. Bert R. Bratton, on April 12, 1985. At this time, plaintiff reported pain in his right hip and leg and numbness of the right leg. EMG studies were performed which showed a mild L4-L5 radiculopathy. Plaintiff's clinical exam also suggested some nerve root irritation. Dr. Bratton suggested to plaintiff that he might be a candidate for surgical decompression of the injured nerves.
On May 13, 1985, Dr. G. Gernon Brown, an orthopedic surgeon, examined plaintiff once at the request of the compensation carrier, National Union. After examining plaintiff and reviewing reports received from Drs. Bratton and Kott, Dr. Brown reported that plaintiff's history of radiating pain was suggestive of nerve root irritation but there was no objective evidence of injury. In Dr. Brown's opinion, plaintiff did not require surgery, was not disabled and could return to his previous job duties.
In contrast to Dr. Brown's recommendations, on June 3, 1985, after reviewing the previous myleogram studies, Dr. Bratton recommended that plaintiff undergo the decompressive surgery that he had previously discussed with plaintiff. As of this date, Dr. Bratton did not think that plaintiff could return to his previous job.
Subsequently, plaintiff was examined by Dr. William J. Johnston, Jr., a neurosurgeon, on July 10, 1985. Dr. Johnston performed a neurological exam and reviewed the previous lumbar myelogram and CT scan tests. Dr. Johnston reported no objective evidence of neurosurgically significant cord or root compression and advised no surgical intervention at that time.
Plaintiff's pain continued and he returned to Dr. James in July and August of 1985 for continued conservative care. At this time, Dr. James considered plaintiff *181 unable to perform his previous job duties due to his pain.
Due to financial hardship, plaintiff returned to work with United Steel, H & W's non-union counterpart, at a lesser rate of pay than that which he had been paid before the accident. He worked from September 9, 1985 through August 19, 1986. During this period of time, plaintiff continued to see Dr. James. Each time plaintiff was required to lift steel while on the job, his low back pain was severely aggravated. In February of 1986, Dr. James recommended extensive therapy at a chronic pain center. Plaintiff did not receive this therapy due to the insurance company's refusal to pay.
In April of 1986, another physician, Dr. Homer D. Kergis, ordered a magnetic resonance imaging evaluation which revealed a bulging of the lumbosacral disc. Dr. Kergis initially prescribed conservative therapy. Plaintiff's pain increased, causing him to stop working in August of 1986. In December of 1986, Dr. Kergis performed additional testing and diagnosed a herniation of the fifth lumbosacral disc. At this point, Dr. Kergis presented plaintiff's case to Dr. Edward Connolly, Head of the Department of Neurosurgery at the Ochsner Clinic. Both Drs. Kergis and Connolly agreed that plaintiff was in need of decompression surgery. Plaintiff underwent this surgery in March of 1987. Afterwards, plaintiff recuperated well. However, within a few months after the surgery, plaintiff experienced recurring back and right leg pain along with numbness and tingling.
In June of 1988, plaintiff was examined by Dr. Edmund C. Landry, Jr., an orthopedic surgeon. Plaintiff reported that his pain was greater than that which he had experienced prior to surgery. After examination of plaintiff, Dr. Landry diagnosed lumbar disc disease that was still symptomatic. Dr. Landry observed that plaintiff walked with a limp and appeared to be truly experiencing pain. Dr. Landry determined that plaintiff's condition was permanent. In his opinion, plaintiff is not able to work and has not been able to work at least since the time he underwent surgery. He was not able to offer an opinion as to plaintiff's ability to work prior to that time. In Dr. Landry's opinion, plaintiff's condition worsened after surgery due to epidural fibrosis scarring around the nerve root in his lower back.
The trial court determined that plaintiff's work-related accident has rendered him totally and permanently disabled. The trial court awarded total and permanent disability payments for each week from June 1, 1985 until the date of judgment. The trial court further found defendants to have arbitrarily and capriciously discontinued worker's compensation payments and awarded statutory penalties on each of these payments.
The trial court further awarded to plaintiff worker's compensation payments for each week from the date of judgment for the remainder of plaintiff's life. Additionally, the trial court awarded plaintiff the sum of twenty thousand and no/100 ($20,000.00) dollars as attorneys' fees.
The issues raised on appeal are:
1. Is plaintiff's suit prescribed?
2. Is plaintiff disabled as a result of his work-related accident and, if so, what is the extent of his disability?
3. Is plaintiff eligible for worker's compensation benefits during the period of time for which he received unemployment compensation benefits?
4. Are defendants entitled to reduce worker's compensation benefit payments due to plaintiff by the amount of social security benefits received by plaintiff?
5. Did defendants act arbitrarily and capriciously when they ceased paying worker's compensation benefits to plaintiff on May 27, 1985?
6. Is the trial court's award to plaintiff of attorneys' fees in the amount of $20,000.00 excessive?

PRESCRIPTION
In pertinent part, La.R.S. 23:1209 provides that all claims for compensation resulting from personal injury shall be forever barred unless within one year after *182 the accident the parties have agreed upon the compensation payments to be made or formal proceedings for compensation have been begun. However, where compensation payments have been made, the limitation shall not take effect until the expiration of one year from the time of making the last payment.
In the present case, plaintiff was injured on September 14, 1984. Plaintiff instituted the present suit for worker's compensation on July 27, 1987. Defendants argue that the one year limitation imposed by La.R.S. 23:1209 began to run on May 29, 1985, when compensation payments ceased.
The trial court found that the suit was not prescribed because an "interruption occurred when plaintiff returned to work and was placed in the non-union counterpart of the company, in an overseer's capacity at a reduced rate of pay and in light duties. The Court finds this action was intended to string the plaintiff along in order to keep him from filing suit. This subterfuge continued until August of 1986."
Our jurisprudence is well settled, providing that payment of wages in lieu of compensation will interrupt prescription as will compensation payments. Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972); Carter v. Belle Chasse State School, 451 So.2d 63 (La.App. 4th Cir.), writ denied, 458 So.2d 120 (1984). The test for determining if the wages paid were in lieu of compensation is whether or not the wages were actually earned. Id., Comardelle v. Jeandron Chevrolet, Inc., 449 So.2d 601 (La.App. 1st Cir.), writ denied, 456 So.2d 1015 (1984).
Plaintiff returned to work in September of 1985 in a "supervisory" capacity, yet his rate of pay was reduced. Plaintiff testified that when he returned to work in 1985, he performed only about one-tenth of the work he had done before he was injured. He said he did nothing but give directions to other workers to pick up or carry things. Examining plaintiff's work duties indicates that wages paid to plaintiff from September 9, 1985 through August 19, 1986 were paid in lieu of compensation.
The trial court also emphasized another factor that should be considered when determining whether wages are paid in lieu of compensation: whether an employer has lulled the employee into a false sense of security. In the present case, we find no manifest error in the trial court's finding that plaintiff's employment during 1985 and 1986 was for the purpose of discouraging plaintiff from filing suit.
Since the wages paid to plaintiff from September 9, 1985 through August 19, 1986 were paid to plaintiff in lieu of compensation, the one year prescriptive period which had begun to run on May 29, 1985 was interrupted. The one year prescriptive period began to run again on August 19, 1986. The trial court correctly found that plaintiff's suit, filed on July 27, 1987, had not prescribed.

DISABILITY
In a worker's compensation suit, plaintiff has the burden of proving by a preponderance of the evidence that he is disabled and that there is a causal relation between the disability and a work-related accident. Lindsey v. H.A. Lott, Inc., 387 So.2d 1091 (La.1980). However, the plaintiff's disability is presumed to have resulted from an employment accident if the plaintiff was in good health prior to the accident, but commencing with the accident the symptoms of the disabling condition appear and manifest themselves continuously thereafter, provided that there is some reasonable possibility of a causal connection between the accident and the disabling condition. Id., Droddy v. Cliff's Drilling, Inc., 471 So.2d 223 (La.1985). Furthermore, when an accident and resulting disability occur without an intervening cause, the accident is presumed to have caused the disability. This presumption can be rebutted, but its effect is to shift the burden of proof to the defendant. Id.
In the present case, there is no question that plaintiff was injured while lifting steel during the performance of his job duties. At that instance, plaintiff experienced pain and has continued to suffer from pain in his back and legs since the *183 time of this accident. The medical testimony establishes that plaintiff's back injury and pain are consistent with the lifting maneuver he was performing at the time the accident occurred. The record further establishes that there were no intervening causes of plaintiff's back injury. Accordingly, the work-related accident in the present case is presumed to have caused plaintiff's disability. Defendants have set forth no evidence to rebut this presumption.
Regarding the extent of plaintiff's disability, the trial court found as follows:
It is very clear to the Court that Mr. Warren has withstood severe pain for several years. His testimony is corroborated by the medical evidence and he was completely credible on the stand. Mr. Warren's disability is permanent and total, and Mr. Warren, who reached only the eighth grade and has been a laborer all his life, is unable to work at all in his present condition. He cannot sit, stand, ride on rough terrain, bend over, twist, lift, or even do ordinary household tasks. His pain lessens when he rests. He can walk moderately and that seems to help. His doctors all now say that he will be immobilized periodically by pain for the rest of his life. Dr. Landry, an orthopedic surgeon to whom Mr. Warren was referred for "disability determination" by the Social Security Administration, certified Mr. Warren totally and permanently disabled for the Social Security Administration. I observed Mr. Warren throughout the trial. He is no faker.
We find no manifest error in the trial court's findings.
Appellants assert that before adjudicating an injured employee to be permanently and totally disabled, the trial court must make a determination of "whether there is a reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education" as required by La.R.S. 23:1226. Appellants argue that the trial court failed to make this determination in the present case.
We disagree. Although the trial judge did not expressly refer to La.R.S. 23:1226(D) and/or its provisions, his reasons quoted above evidence that he did consider whether plaintiff could benefit from rehabilitation. The trial court examined plaintiff's level of education, his physical abilities at the time of trial and medical evidence regarding the future of plaintiff's condition. We find that the trial court's examination of these appropriate factors regarding the likelihood of rehabilitation is sufficient to satisfy the requirements of La.R.S. 23:1226(D).

UNEMPLOYMENT COMPENSATION BENEFITS
La.R.S. 23:1225(B) states:
No compensation benefits shall be payable for temporary or permanent total disability or supplemental earnings benefits under this Chapter for any week in which the employee has received or is receiving unemployment compensation benefits.
Plaintiff testified that he received unemployment compensation at a rate of $205.00 per week for twenty-six weeks, after he left work for United Steel in August of 1986. Thus, applying La.R.S. 23:1225(B), plaintiff was clearly ineligible to receive worker's compensation benefits for this twenty-six week period during which he received unemployment compensation benefits. Wills v. Solida Const. Co., 543 So.2d 1365 (La.App. 2d Cir.1989); Young v. State Farm Fire & Casualty Co., 511 So.2d 15 (La.App. 3d Cir.1987). Although plaintiff's testimony did not establish the exact dates he received the unemployment compensation, we estimate that he received these benefits from September 1, 1986 through February 28, 1987. See La.R.S. 23:1600(4). Accordingly, we must amend the trial court's judgment to provide that defendants are not liable to plaintiff for worker's compensation payments during this period of time.

*184 SOCIAL SECURITY BENEFITS
Appellants claim that pursuant to La.R.S. 23:1225(A) they are entitled to an offset against worker's compensation benefits for the amount of social security disability benefits that plaintiff has received.
We disagree. The record establishes that defendants-appellants failed to make a judicial demand for this offset at the trial level. The jurisprudence clearly establishes that worker's compensation benefits can be reduced pursuant to La.R.S. 23:1225 prospectively only from the date the employer makes a judicial demand for the offset. Watson v. Amite Milling Co., Inc., 560 So.2d 902 (La.App. 1st Cir.1990); Sanchez v. Viccinelli Sheet Metal & Roofing, 473 So.2d 335 (La.App. 1st Cir.), writ denied, 477 So.2d 1124 (1985). Thus, defendants-appellants are not entitled to an offset for social security benefits received by plaintiff.

STATUTORY PENALTIES
An assessment of penalties is proper for the nonpayment of compensation benefits unless nonpayment results from conditions over which the insurer or employer had no control or unless the employee's right to such benefits had been "reasonably controverted". La.R.S. 23:1201 E.
The trial court determined that defendants were arbitrary and capricious in terminating plaintiff's benefits and imposed the penalties beginning in June of 1985. We find that the trial court was manifestly erroneous in imposing penalties at this time. As of April of 1985, Dr. Bratton was of the opinion that plaintiff was a possible candidate for surgical decompression surgery. However, Dr. Brown's examination of plaintiff in May of 1985 revealed no objective evidence of injury. Dr. Brown unequivocally reported to defendants that plaintiff did not require surgery, was not disabled and could return to his previous work duties. Since the defendants terminated benefits pursuant to Dr. Brown's report, we find the termination of benefits at this time was not arbitrary and capricious. Based on the information provided in this report, defendants had a reasonable basis to believe that medical expenses and compensation benefits were not due to plaintiff. Furthermore, the events of the next few months demonstrate that defendants were not arbitrary and capricious in terminating plaintiff's benefits at this time. Although Dr. Bratton recommended that plaintiff undergo surgery in June of 1985, Dr. Johnston reported no objective evidence of neurological problems and advised no surgical intervention in July of 1985. Subsequently, plaintiff returned to work in September of 1985.
However, after Dr. Kirgis diagnosed a herniated disc and Drs. Kirgis and Connolly recommended surgery in a report dated December 5, 1986, defendants' failure to resume payments of benefits was arbitrary and capricious. When an employer or insurer subsequently receives objective evidence which indisputably shows a claimant to be disabled, the employer or insurer cannot rely on a prior medical report in order to avoid penalties for arbitrary failure to reinstate compensation benefits. Lott v. Reintjes Indus. Services of La., 540 So.2d 472 (La.App. 1st Cir.1989). Defendants failed to produce any factual or medical information to counter Dr. Kirgis' December 5, 1986 diagnosis that plaintiff was suffering from a herniated disc and was in need of surgery. Therefore, defendants were no longer justified in relying on the 1985 medical reports. Although defendants' failure to resume payment of worker's compensation benefits in December of 1986 was arbitrary and capricious, we do not impose penalties from this date because plaintiff was at this time receiving unemployment compensation benefits. Therefore, we impose the statutory penalty on each worker's compensation payment that became due after February 28, 1987, when plaintiff's unemployment benefits ceased. The trial court's judgment is amended accordingly.

ATTORNEYS' FEES
La.R.S. 23:1201.2 imposes liability for the payment of all reasonable attorneys' fees for the collection of a worker's compensation claim when the discontinuance *185 of payments is found to be arbitrary, capricious, or without probable cause. Since the defendants were arbitrary and capricious in failing to reinstate benefits to plaintiff, the trial court acted properly in awarding attorneys' fees. However, we find the award of twenty thousand ($20,000.00) dollars in attorneys' fees to be excessive. Although the trial court has great discretion in making this determination, the award of attorneys' fees must be reasonable based upon the degree of skill and work involved in the case, the number of court appearances, the depositions, the office work and the time spent in court. On appeal, an additional factor to be considered is the time expended on the appeal. Frazier v. Conagra, Inc., 552 So.2d 536 (La.App. 2d Cir.1989), writ denied, 559 So.2d 124 (1990). Also see, Woolsey v. Cotton Bros. Bakery Co. Inc., 535 So.2d 1119 (La.App. 2d Cir.1988), writ denied, 537 So.2d 1168 (1989). After considering these factors with regard to the present case, we find an award of seven thousand five hundred ($7,500.00) dollars to be a reasonable fee for the efforts expended by plaintiff's counsel. The trial judge's award of twenty thousand ($20,000.00) dollars is accordingly reduced to seven thousand five hundred ($7,500.00) dollars.

DECREE
The judgment of the trial court is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Edward Warren, and against the defendants, H & W Steel Erectors, Inc., a/k/a United Steel Erectors, Inc. and National Union Fire Insurance Company for worker's compensation benefits in the amount of Two Hundred Forty-eight and no/100 ($248.00) Dollars per week from June 1, 1985, until September 9, 1985; from August 20, 1986 until September 1, 1986; and, from March 1, 1987 until the date of the trial court's judgment, December 28, 1988.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Edward Warren, and against the defendants', H & W Steel Erectors, Inc., a/k/a United Steel Erectors, Inc. and National Union Fire Insurance Company for penalties in the amount of twelve percent (12%) per annum on each worker's compensation payment due to plaintiff from March 1, 1987 unto December 28, 1988.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Edward Warren, and against the defendants, H & W Steel Erectors, Inc., a/k/a United Steel Erectors, Inc. and National Union Fire Insurance Company, declaring plaintiff, Edward Warren to be totally and permanently disabled and that the defendants, H & W Steel Erectors, Inc., a/k/a United Steel Erectors, Inc. and National Union Fire Insurance Company, to pay until plaintiff, Edward Warren, the sum of Two Hundred Forty-eight and no/100 ($248.00) Dollars per week from the date of the trial court's judgment, December 28, 1988, for the period of plaintiff's disability.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Edward Warren, and against the defendants, H & W Steel Erectors, Inc., a/k/a United Steel Erectors, Inc. and National Union Fire Insurance Company, ordering the defendants to pay the sum of Seven Thousand Five Hundred and no/100 ($7,500.00) Dollars, as attorneys' fees.
The trial court's judgment is affirmed in all other respects. Costs of this appeal are to be paid by defendants-appellants.
AMENDED, AND AS AMENDED, AFFIRMED.