BARRY, Judge.
The Board of Commissioners of the Port of New Orleans (Dock Board) appeal a workers’ compensation award of permanent total disability benefits to Clayton J. Messina, Jr.
Mr. Messina was injured on March 22, 1982 and received $162.00 per week in benefits from March 1982 until September 1990, plus medical expenses until 1989. After a trial in April 1992, Mr. Messina was found permanently and totally disabled and awarded $162.00 per week plus $9,706.89 for past medicals, interest and costs. The Dock Board submits that Mr. Messina’s job accident caused a partial, not permanent, disability and he should receive a maximum of 450 weeks under La.R.S. 23:1221(3) (as at the time of his injury).
FACTS
Mr. Messina, 43 years old, testified that he had two years of college and then worked for five years with the New Orleans Police Department. He managed real estate and operated a laundry for about one-and-a-half years, then in 1975 began working with the Mississippi River Bridge Police.
In 1982 he was hired by the Dock Board. On March 22, 1982, while in the course of his employment as a harbor police officer, he responded to a radio message of a possible suicide attempt on the Seabrook Bridge. Mr. Messina tried to calm the subject, but somehow they went over the bridge railing and Mr. Messina landed in water and mud below the bridge with the subject on top of him.
Mr. Messina suffered a torn medial meniscus of his right knee and other injuries, and had knee surgery. Within a week of the incident he went to Dr. David Mitchell for psychiatric treatment because “I was told something by one of my sergeants that made me feel responsible for my injury.” [1] Mr. Messina had seen Dr. Mitchell for about three months in 1978 for divorce counseling. Mr. Messina testified that the Dock Board paid Dr. Mitchell’s fees and for medicines prescribed throughout his course of treatment. Dr. Mitchell retired and Mr. Messina was referred to Dr. Paul Kantack, psychiatrist, but the Dock Board’s payment for psychiatric treatment ceased. Mr. Messina stopped his weekly visits to Dr. Kantack but received treatment at a mental health center.
Mr. Messina testified that he tried to return to real estate management and to work at his son’s oil station but was unable primarily because of his mental condition: he’s lost confidence, the ability to concentrate, and he sleeps too much.
Dr. Michael Brunet, orthopedic surgeon, testified that he treated Mr. Messina from 1983 to the trial. He stated that as a result *455 of the accident Mr. Messina had developed chronic synovitis in his injured right knee which was complicated by a systemic rheu-matologie condition, resulting in a ten percent permanent disability. Dr. Brunet opined that Mr. Messina’s physical condition would permit him to do sedentary work, but not police work.
Dr. Kantack testified that Mr. Messina had a major depressive disorder, recurrent without psychosis, and post traumatic stress disorder. Dr. Kantack said that the knee injury changed Mr. Messina from a physically and mentally active person to one who was unable to work in his desired field as a policeman, even as a dispatcher. Although he suffered traumatic events in his life since 1982,[2] the job accident began the “avalanche” which resulted in his current psychological disability.
Dr. Kantack stated that Mr. Messina’s deep depression can be extremely debilitating, and he “would be appreciably limited in the type of work that he could do” and the condition would “likely lead to frequent absenteeism.” No testimony was elicited regarding Mr. Messina’s vocational capacity.
The Dock Board’s only witness, Ruby Murray, its Safety and Workmans’ Compensation Coordinator since 1985, testified that she pays medical and prescription bills submitted for compensation claims if the doctor has submitted a report. She said she did not have authorization to pay Dr. Kantack because he did not submit a report.
DISCUSSION AND LAW
The Dock Board argues that no causal connection exists between the 1982 accident and Mr. Messina’s psychiatric disability. It submits that benefits should be limited to partial disability and the maximum has been paid.[3] Mr. Messina asks that the judgment for permanent total disability be affirmed.
An employee seeking compensation benefits has the burden of proof by a preponderance of the evidence that he is disabled and that there is a causal relationship with an employment accident. Westley v. Land & Offshore, 523 So.2d 812, 813 (La.1988). A disabling condition is presumed to have occurred from an employment accident if the worker was previously in good health, but continuing symptoms appear after the accident, as long as medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Droddy v. Cliff’s Drilling, Inc., 471 So.2d 223, 225 (La.1985). Once the claimant has established this presumption, the burden shifts to the employer. Id. Factual findings regarding the existence, causation and duration of disability are entitled to great weight and should not be disturbed absent manifest error. Bailey v. Zurich American Insurance Co., 503 So.2d 611, 614 (La.App. 4th Cir.1987).
The evidence establishes that Mr. Messina began psychiatric treatment within one week of the 1982 accident. He did not have a psychological problem other than a brief period for divorce counseling. The psychiatric treatment continued to the time of trial, and the Dock Board paid for those sessions until Mr. Messina changed doctors in 1989. The treating psychiatrist testified that Mr. Messina was disabled because of severe depression and post traumatic stress disorder triggered by this incident. Thus, there was prima facie proof of a causal relationship between the 1982 accident and Mr. Messina’s disability, which shifted the burden of proof to the Dock Board. The Dock Board did not carry its burden.
*456 The trial court’s finding of permanent total disability is supported by the evidence and is affirmed.

AFFIRMED

. It appears some co-workers suggested he should have shot the subject rather than permit himself to be pulled off of the bridge.

. An automobile accident and the suicide of Mr. Messina’s wife.

. At the time of Mr. Messina’s injury, La.R.S. 23:1221(3) provided:
For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the employee actually earns in any week thereafter ... during the period of disability, but ... not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977.