496 So.2d 1241 (1986)
Norman HUGHES
v.
ROYAL GLOBE INSURANCE COMPANY and Purolator Courier Corp.
No. 86-CA-158.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1986.
Writ Denied December 12, 1986.
*1243 Bernard, Cassisa, Saporito & Elliott, Eugene M. McEachin, Jr., Howard B. Kaplan, Metairie, for Royal Globe Ins. Co. and Purolator Courier Corp., defendants-appellants.
Jerome Friedman, A Professional Law Corp., Jerome Friedman, Metairie, for Norman Hughes, plaintiff-appellee-appellant.
Before CHEHARDY, C.J., GRISBAUM, J., and NACCARI, J. Pro Tem.
CHEHARDY, Chief Judge.
In this worker's compensation suit, Purolator Courier Corp. and Royal Globe Insurance Company appeal from a judgment that found Norman Hughes permanently and totally disabled and ordered defendants to pay plaintiff benefits in the amount of $148 per week from the date of his accident, July 1, 1980, until his death. Defendants assert the district court erred in finding that plaintiff's preexisting mental condition was aggravated by the accident and in finding that plaintiff was permanently and totally disabled by his mental condition.
Hughes has cross-appealed, raising as error the trial judge's failure to order defendants to pay certain medical expenses and expert witnesses' fees, his failure to award penalties and attorney's fees and his failure to award interest on each unpaid installment as it became due.
Hughes had been working as a driver-courier for Purolator for approximately 3½ years when he fell on a flight of stairs on July 1, 1980. He suffered initial physical injuriescontusions, abrasions and cervical strainfor which he underwent treatment for several months. Even after all objective symptoms of his injuries had disappeared, however, plaintiff continued to complain of pain.
He was paid benefits for temporary total disability until November 25, 1980. Royal Globe terminated the benefits after receiving several reports from plaintiff's treating physician in which he stated that he could not account for plaintiff's continued complaints of pain, as the physical injury had resolved itself by that time.
Hughes filed this suit on March 31, 1981, asserting he was permanently and totally disabled because he could not work without substantial pain. He continued to be examined and treated by various physicians, psychiatrists and psychologists, who determined that his complaints of pain were psychosomatic rather than organic. Hughes was hospitalized in May 1981 when an old ulcer flared up.
Hughes was discharged as physically ready to return to work on June 9, 1981 and began working again on June 15, 1981. Because another employee had been assigned *1244 to plaintiff's former courier route during plaintiff's long absence, he was given a position as a utility courier. As a utility courier, he was assigned to different routes according to where he was needed each day. On July 29, 1981 Hughes refused to run a new route to which he was assigned, because he felt he could not do it. He was unable to adjust to a new route every day. As a result, he was warned that another violation would result in his discharge. Thereafter, on August 6, 1981, he voluntarily resigned his employment.
Hughes was hospitalized in a psychiatric ward for several weeks in October 1981 because he "completely lost touch with reality." At the time of trial he was being treated by psychotherapy and medication. The medical personnel who had examined and/or treated the plaintiff generally agreed that plaintiff suffers from psychotic depression, that he had shown symptoms of this in the past, but that it was latent. They disagreed as to whether the reawakening of his psychological problems was caused by organic brain syndromepossibly Alzheimer's Diseaseor by the trauma of the accident and the subsequent injuries. There was no question that plaintiff's condition disables him from working at present.
Plaintiff testified he has absolutely no memory of working for Purolator at all, although he worked there three years prior to the accident. He had no memory of the accident of July 1, 1980. His supervisor at Purolator testified plaintiff had performed his job satisfactorily prior to his injury, but could not deal with the job when he returned to work.
After reviewing the medical evidence in detail, the trial judge concluded,
"The medical testimony in this case is in hopeless conflict with the experts disagreeing among themselves, but one finding does emerge consistently: Norman Hughes is a long-term sufferer of a personality disorder and that disorder, while not incapacitating prior to the accident, was aggravated or worsened by the accident to the extent that he is now totally incapacitated from performing his previous employment. Since this is a case under the old Workmen's Compensation Act, he is entitled to total and permanent benefits under that act, with credit for payments previously made."
As an appendix to this opinion we include the district court's reasons for judgment, which summarizes the relevant medical testimony.
In order for us to reverse the district court's ruling, we would have to find the judge manifestly erroneous in his factual determination that plaintiff's incapacity was aggravated by the accident on July 1, 1980. Guillot v. Sentry Ins. Co., 472 So.2d 197 (La.App. 5 Cir.1985).
In a case where a claimant seeks worker's compensation for neurotic disability, traumatic neurosis, etc., the court must proceed with the utmost caution and exercise extreme care in view of the nebulous characteristics of such a condition and the possibility of the symptoms being easily feigned. Andrus v. Rimmer & Garrett, Inc., 316 So.2d 433 (La.App. 3 Cir.1975).
The evidence in a worker's compensation case in which there is a claim of psychoneurotic disability must be carefully scrutinized due to the vague, nebulous and subjective nature of the disability. Le Beuf v. Motel Metz, Inc., 276 So.2d 895 (La.App. 1 Cir.1973).
A worker who is susceptible to disability from an accident is entitled to worker's compensation benefits even though the same accident or injury would have caused little or no harm to a healthy worker. Achord v. H.E. Weise Const. Co., 422 So.2d 1248 (La.App. 1 Cir.1982). An employer takes an employee as he finds him and is liable for compensation even when a disabling accident was such only because of a preexisting disorder in the employee. Id.
An employee's disability is compensable if a preexisting disease or condition is activated or precipitated into disabling manifestations as a result of a work accident. Herrin v. Georgia Cas. & Sur. Co., *1245 414 So.2d 1323 (La.App. 2 Cir.1982); see also, Pendleton v. Spartan Bldg. Const., 432 So.2d 298 (La.App. 5 Cir.1983).
It is not necessary for the expert witnesses to determine the exact cause of the disability in order for the employee to recover benefits; the claimant need only show by a preponderance of the evidence that the work accident caused the disability. Hammond v. Fidelity & Cos. Co. of New York, 419 So.2d 829 (La.1982).
In Hughes v. Webster Parish Police Jury, 414 So.2d 1353 (La.App. 2 Cir.1982), the court ruled that although a compensation claimant's unusual emotional characteristics preexisted a work-related accident, it is the rule that an employer takes his employee as he finds him and an employee's disability is compensable when the nondisabling preexisting condition is activated or precipitated into disabling manifestations as a result of injury.
In Cripps v. Urania Lumber Co., 213 So.2d 353 (La.App. 3 Cir.1968), evidence that the employee worked regularly for almost a year immediately preceding a work-related injury to his head, and expert testimony that the employee was suffering from either a subdural hematoma or traumatic neurosis directly attributable to the head injury, established that the employee's disabling mental problems were causally related to the accident and were not the result of a preexisting mental disease.
In Droddy v. Cliff's Drilling, Inc., 471 So.2d 223 (La.1985), our Supreme Court found the claimant established a presumption that his permanent partial disability was caused by the work-related accident, for purposes of worker's compensation, where he proved that both his arm and shoulder pain and his depression commenced a short time after the accident and that he was still in pain and still depressed at the time of trial.
A disability is nonetheless real because its causation is imaginary; the test is whether the employee is sincere in his belief that he suffers a disability resultant of a real injury. Hughes v. Webster Parish Police Jury, supra.
Under the workers' compensation law prior to the 1983 amendments, if a worker was shown to be totally disabled at the time of trial, and the disability was of indefinite or indeterminate duration, then the worker was entitled to permanent benefits as opposed to temporary benefits. Olson v. Ins. Co. of State of Pa., 471 So.2d 1151 (La.App. 3 Cir.1985).
Considering the above, our review of the record shows the trial judge's credibility determinations of the witnesses were credible. We find no manifest error in his factual conclusions. Accordingly, he properly found plaintiff to be permanently and totally disabled.
However, the trial judge erred in awarding benefits "until plaintiff's death." In its 1980 form, LSA-R.S. 23:1221(2) authorized payment of permanent total disability benefits only "for the period of such disability." Therefore the judgment must be amended accordingly. Achord v. H.E. Weise Const. Co., supra. Thus, if plaintiff is found at a later date to have recovered sufficiently to work in some capacity, the defendants may apply to change the benefits award. LSA-R.S. 23:1331; Bordelon v. Vulcan Materials Co., 472 So.2d 5 (La. 1985).
We find no error in the trial judge's failure to award penalties and attorney's fees against the insurer. Considering the reports of Dr. Walter Brent on which the defendants apparently relied, and the disputed nature of the required causal effect between the accident and this type of disability, we do not find the insurer's action was arbitrary or capricious. See Hammond v. Fidelity & Cas. Co. of New York, supra.
We do consider it proper, however, to award interest on each payment from the date it became due. Bordelon v. Vulcan Materials Co., supra. In addition, the plaintiff correctly argues that the trial judge erred in failing to order the defendants to pay the plaintiff's medical expenses *1246 and the expert witnesses' fees. We will modify the judgment accordingly.

DECREE
For the foregoing reasons the judgment of the district court is amended as follows: Defendants, Royal Globe Insurance Company and Purolator Courier Corp., are ordered to pay plaintiff, Norman Hughes, compensation for permanent and total disability, in the amount of $148 per week, retroactive to July 1, 1980 and continuing for the period of such disability, with legal interest on each payment from its due date until paid and with credit to the defendants for payments previously made. Defendants are further ordered to pay plaintiff's unpaid past medical expenses, in the amount of $11,419.95, and future medical expenses attributable to this disability. Defendants are further ordered to pay expert witnesses' fees in the amount of $250 each to Doctors James Brown, Edna Doyle, F. William Black, Richard Leach and Nancy Rumage. Finally, defendants are ordered to pay all costs of both trial and appeal. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.

APPENDIX

REASONS FOR JUDGMENT
This is a workman's compensation claim presented by Mr. Norman E. Hughes, Jr., which arose out of a work-related accident in July of 1980, when Mr. Hughes fell on a stairway while in the employ of Purolator, whose workmen's compensation carrier is Royal Globe.
The only question presented in this matterand indeed it is a serious and difficult oneis whether or not plaintiff's present condition was caused or aggravated by the accident, for there is no question that there was an initial injury.
A review of testimony as to plaintiff's condition as given by both lay and expert witnesses follows:
Dr. James Brown, a psychiatrist and board certified, saw Mr. Hughes a number of times. He related to Dr. Brown a history of the accident and medical/psychiatric problems both prior and subsequent to the incident. He related depression in the mid 70's, and further episodes of depression subsequent to the accident. He said his depression increased after the accident, and he related inability to sleep, erratic eating and disturbed thought patterns. He further related pain in the neck, hip and shoulders, all, of which he attributed to the accident in addition to difficulty in sleeping and nightmares. Dr. Brown noted that Hughes suffered from mood shifts during their conversations; noted further that he formulated "weird" ideas: e.g. he had only to think of something and it would happen. Hughes cited as an example of this the recent Atlanta killings.
Dr. Brown's diagnosis was: "psychotic, depressive."
The doctor continued to see him at intervals; his outlook was generally the same, paranoid, delusional.
In October, 1981, the doctor had him admitted as an emergency case to the psychiatric unit of Baptist Hospital. He was suffering, at admission, from severe memory loss, but eventually his long term memory returned. His E.E.G. was not remarkable. Some calcification was found in his skull, but the doctor could not say that this was unusual. A cat scan yielded results compatible with cerebral atrophy, a condition consistent with some of his complaints such as, for example, episodes of crying and delusion.
Dr. Brown felt that a fall was not likely to produce the condition found and suggested that trauma would not likely cause the areas of calcification observed, but would be instead more localized in effect. Dr. Brown found that some appearance of Alzheimer's disease was evident. The doctor felt that his accident could not cause his disease which was natural in origin and progressive in symptomatology. He suggested, however, that such an accident could make him unable to cope.
Dr. Doyle saw Mr. Hughes and noted pain in the left buttock and shoulder, and in the neck. Through December of 1980, his pain continued and he began to complain of headaches and pain in the left ear. The doctor reported a normal range of motion *1247 but indicates that neck spasm was observed in July of 1981 (one year post accident). He found much emotional overlay, and suggested a psychiatrist.
Dr. Richard Leach, a specialist in gastro-neurology, testified that he saw Hughes, beginning on April 29, 1981. He found an active ulcer, which, he indicated, could be caused by any number of things: food, stress, hormones, acid stomach, etc.
Two of Mr. Hughes' aunts testified, stating generally that his condition deteriorated after the accident.
Nancy Rummage, a clinical psychologist, testified that she saw the plaintiff and administered a series of psychological tests.
Her conclusions were: average intelligence, diffused cerebral dysfunction, depression, schizophrenic disorder. As to the cerebral dysfunction, it was not localized, but all areas were affected, and its origin could not be determined. She indicated that Alzheimer's is a medical diagnosis and that she is not an M.D. She said he could not work because of his condition, but she knew not what caused the condition, but felt further that: given his condition prior to the accident, an injury would only tend to aggravate it. Her impression, elicited on cross-examination was: 1) she could not assign or disassign trauma as the cause of his brain dysfunction; 2) his psychological dysfunction must have its roots way back in the past; and 3) the accident possibly aggravated a pre-existing psychological condition, but she had not seen his prior work records.
Norman Hughes, Jr. testified that he does not remember working for Purolator, and does not know why he left. He is not employed now (at time of trial). He does not remember the accident. He has had trouble with his stomach, he has trouble eating and sleeping, and he is visited by bad dreams. He sometimes feels like he can predict what is going to happen, such as the outcome of horse races. His testimony indicates that he does not remember many common and important events in his life.
William Black, Ph.D., a clinical neuropsychologist, testified by way of deposition.
He indicated that he could not correlate plaintiff's problems with physical brain dysfunction. He felt the condition was not compatible with Alzheimer's disease; but that instead, plaintiff suffers from a "significant, pervasive and chronic personality disturbance", typified as a "depressive reaction." Any atrophy that plaintiff suffers is of long duration and not a recent phenomenon; and in no event causes him problems, he is presently incapacitated.
The medical testimony in this case is in hopeless conflict with the experts disagreeing among themselves, but one finding does emerge consistently: Norman Hughes is a long-term sufferer of a personality disorder and that disorder, while not incapacitating prior to the accident, was aggravated or worsened by the accident to the extent that he is now totally incapacitated from performing his previous employment. Since this is a case under the old Workmen's Compensation Act, he is entitled to total and permanent benefits under that act, with credit for payments previously made.
Gretna, Louisiana, this 4 day of October, 1985.
/s/ Ronald P. Loumiet
JUDGE