611 So.2d 682 (1992)
Charles STEWART
v.
LOUISIANA PLANT SERVICE INC.
No. 92-CA-0977.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1992.
Rehearing Denied February 12, 1993.
*684 John M. Holahan, New Orleans, for Charles Stewart, Jr., plaintiff.
Louis M. Kiefer, Jr., Raymond P. Augustin, Jr., Keifer, Augustin & Laventhal, Metairie, for Louisiana Plant Service and Employers Ins. of Wausau, a Mut. Co., defendants.
Before SCHOTT, C.J., and KLEES and WALTZER, JJ.
WALTZER, Judge.
This matter concerns a workman's compensation case, in which the hearing officer found in favor of plaintiff employee and awarded compensation in the amount of $112.00 per week for twenty-three (23) weeks. Defendant, employer, appeals, claiming that the hearing officer was in error for concluding that the plaintiff was injured during the course of his employment. The plaintiff appeals, arguing that the hearing officer should have awarded compensation for total and permanent disability, as well as attorney fees and penalties.
Plaintiff, Charles Stewart, Jr., worked for Plant Service Inc., defendant, as a security guard for over twenty years. For the past seventeen of those years, Mr. Stewart was subject to being on call, and would be assigned to various locations in the city. For the last two of those years, Mr. Stewart was regularly assigned to Holsum Bakery on Howard Avenue. Mr. Stewart would travel to and from the bakery by public transportation, as he did for all of his assignments. The bus stop was located several blocks from the bakery. On route from the bus stop to the bakery, Mr. Stewart would cross a bridge over a canal, and would walk through a high crime area. On July 29, 1990, Mr. Stewart was mugged while walking from the bus stop to the bakery just before the canal, about two blocks from the bakery. He was knocked unconscious and thrown twenty feet into the canal. He awoke while in the canal, was helped out of the canal by someone, and taken to Charity Hospital.
Mr. Stewart suffered a serious trauma to his head and neck, which exacerbated his pre-existing arthritis and diabetic condition. About five months after the incident, Mr. Stewart returned to his place of employment, at which time, his employer told him that he would be unable to receive disability compensation and instructed Mr. Stewart to apply for unemployment benefits. Mr. Stewart did as instructed. However, he never received any unemployment benefits due to the fact that he was unable to return to work. Mr. Stewart never returned to work and is still unemployed.
After a hearing, the hearing officer concluded that the mugging incident arose during the course of Mr. Stewart's employment under the "threshold doctrine." The hearing officer proceeded to award compensation in the amount of $112.00 per week, two-thirds (2/3) of plaintiff's weekly income, for 23 weeks, which was the amount of time between the incident and Mr. Stewart's applying for unemployment benefits. The employer now appeals, claiming that the mugging incident did not occur during the course of his employment. Mr. Stewart appeals the hearing officer's compensation award, arguing that his application for unemployment benefits should *685 not have limited his compensation, and that he should be awarded benefits for permanent and total disability. The plaintiff further submits that he is entitled to attorney fees and penalties.
The first issue on appeal is whether the plaintiff was injured during the course of his employment. Louisiana courts have generally held that an accident that befalls a employee while traveling to and from work does not occur during the course of his employment. W. Malone and H. Johnson, 13 Louisiana Civil Law Treatise Worker's Compensation Law and Practice section 168 p. 344. One exception to this rule is the "threshold doctrine." Under this doctrine, an employee who meets with an accident not on his employment premises while traveling to and from work, can recover if he successfully proves that (1) a distinctive travel risk exists for the employee in going to or coming from work, and (2) the risk exists immediately adjacent to his place of work. Templet v. International Truck Line Inc., 230 So.2d 74 (La.1969); Thomasee v. Liberty Mutual Insurance Co., 385 So.2d 1219 (La.App. 3rd Cir.1980).
In determining whether a travel risk exists, the Louisiana Supreme Court has stated that there must be a hazard "which the employee is regularly and peculiarly exposed to by reason of his employment to which the public generally, albeit also subjected to such hazard, is not usually exposed to the extent as the employee." Templet, 230 So.2d at 80-81. In that case the Supreme Court held that traffic in the street immediately adjacent to the employer's premises was not peculiar and distinctive enough to be considered a travel risk. Id., at 80. The Court reasoned that the risk of danger was no greater to the employee than it was to any member of the general public; nor was the traffic or highway immediately adjacent to the work premises any more dangerous than in other areas of the city. Id., at 79-80. This opinion clarified the need of an employee to prove that he was exposed, to a greater extent than the general public, to a risk while traveling to and from work. The Supreme Court in Templet relied on the situations present in earlier cases in which travel risks were found, and stated that "a claim for injuries occurring on a road or highway, as presented here, is not compensable. There must be a hazard such as railroad tracks, tunnels, covered wharves and the like ..." Templet, 230 So.2d at 80. However, Malone and Johnson, in their treatise on worker's compensation, have noted that the Templet opinion, while emphasizing the distinctiveness of the travel risk, should not be read to limit the definition of travel risk to only those situations expressly mentioned. 13 Civil Law Treatise section 169, p. 352.
In Thomasee v. Liberty Mutual Insurance Co., the Louisiana Third Circuit found a travel risk existed for steps leading to a parking lot across the street in which employees were directed to park. Here, the Third Circuit relied on the trial court's finding that the steps were very old and worn and that some of the steps were broken and varying in width. The appellate court thus concluded that the plaintiff was exposed to a risk more so than the general public. Thomasee, 385 So.2d 1219 (La.App. 3rd Cir.1980).
In a recent case, the Supreme Court reiterated its emphasis on the distinctive and peculiar quality of the travel risk in applying the "threshold doctrine." Mundy v. The Department of Health and Human Resources, 593 So.2d 346 (La.1992); reh. den. (Feb.1992). In this case, a nurse was stabbed in a hospital elevator while she was en-route to begin her shift on the eleventh floor. The Supreme Court held that the nurse was not in the course of her employment under the "threshold doctrine." In determining that the nurse was not exposed to a travel risk, the Court stated:
The threshold doctrine generally involves a special risk, attributable to the location of the work premises, that is different from the risks to which the general traveling public is exposed or that is more aggravated in the area adjacent to the employer's premises than elsewhere. [cite omitted] The threshold doctrine is *686 not applicable here. Even if the risk which gave rise to the injury could be considered as a defect hazardous to travelers immediately adjacent to the employer's premises, the risk was no more dangerous in the immediate vicinity of the employer's premises than elsewhere along her route of travel to work. Id. at 350-351.
In each of these cases, the final disposition of the case relied heavily on whether facts were determined by the initial trier of fact which established that the employee was exposed to a greater risk than the general public that was peculiarly related to the employment. Templet, supra at 80; Thomasee, supra at 1221-1222. In Thomasee, the Third Circuit applied a manifest error standard of review to the trial court's initial finding of whether the facts and evidence established a travel risk. Id. at 1221-1222.
In the present case, the hearing officer stated in his reasons for judgment that "there was a distinct travel risk for the plaintiff in going to and coming from his post of work." The plaintiff presented evidence, and the hearing officer found, that the surrounding area of the bakery was a high crime area, an area which the plaintiff, nor any cautious person, would travel unescorted, unarmed at night. Not only was a police crime statistic report of the immediate area of the mugging and the bakery filed into evidence, but the plaintiff testified that the bakery had been burglarized several times, as well as a grocery store down the block. Furthermore, Mr. Stewart, a man in his mid sixties, traveled to and from work by bus and alone on a regular basis, dressed in uniform, and without a gun. He was thus an easy target for the type of crime which ultimately victimized him. This evidence is sufficient to establish that Mr. Stewart was exposed, to a greater extent than the general public, to a distinct travel risk peculiar to his employment on his route from the bus stop to the bakery.
The employer on appeal argues that the police statistical report of crime in the area of the bakery was inadmissible hearsay and should not have been considered by the hearing officer. However, the rules of evidence and procedure are relaxed in workman's compensation hearings.[1] Louisiana courts have consistently held that, in this type of proceeding, hearsay evidence, within discretionary limits, is admissible. Rivers v. Macco, 391 So.2d 873 (La.App. 4th Cir.1980); Johnson v. Cajun Enterprises, 293 So.2d 617 (La.App. 3rd Cir.1974). However, the Fourth Circuit has before held that, even under the relaxed procedure of LSA-R.S. 23:1317, evidence which is clearly inadmissible hearsay should not be considered. Clark v. Atlantic Painting Co., 521 So.2d 505 (La.App. 4th Cir.1988). The crime statistic report presented in this case is not clearly inadmissible hearsay, and the hearing officer was free to use his discretion in considering it. Furthermore, the hearing officer, in reaching the conclusion concerning the amount of crime in that area, could have relied upon the competent evidence of Mr. Stewart's testimony, which described several crimes that had occurred in that neighborhood.
The second prong of the "threshold doctrine" requires that the travel risk be immediately adjacent to the employment premises. With regard to this requirement, it is worth noting how other courts have applied this proximity element. In Thomasee, the Third Circuit determined that steps in a parking lot across the street from the employment premises were sufficiently close enough to apply the "threshold doctrine." Thomasee, 385 So.2d at 1222. In Osborne v. McWilliams Dredging, the surrounding waters of a floating dredge were found to be in the "neighborhood" of the employment premises, thereby allowing worker's compensation. Osborne v. McWilliams Dredging, 189 La. 670, 180 So. 481 (1938). In Guient v. Mathieson Chemical Corporation, the highway and *687 area from a bus stop to the employment premises were sufficiently close enough to hold that the employee was in the course of his employment. Guient v. Mathieson Chemical Corporation, 41 So.2d 493 (La. App. 1st Cir.1949). Moreover, in the two U.S. Supreme Court cases which laid the basis for the "threshold doctrine", railroad tracks leading into the employment premises, which the plaintiffs in those cases necessarily had to cross, were determined to be close enough and related enough with the employment premises to hold the employer liable for worker's compensation. Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507 (1928); Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366 (1923).
In the case presently before us, the plaintiff testified that the property he patrolled covered two full blocks. He further testified that his duties took him to the general area around the bakery, that he would walk around the blocks on which the bakery was located, and that his duties were to suppress criminal activity in the area. Because he had no car, he had to travel to and from work by public transit. The bus stop he used was the closest one to his place of employment, as it was only three to four blocks away. No matter which route he took from the bus stop to the bakery, he still would have had to walk through the same high crime area and cross the same canal. We do not think that the hearing officer was in error for holding that the mugging incident, which occurred within two blocks of the bakery, was sufficiently close in proximity to the area patrolled by Mr. Stewart. We, therefore, believe that the "threshold doctrine" was properly applied in this case, and that the employer was liable for worker's compensation.
The second issue on appeal is the trial court's compensation awarded. The hearing officer awarded compensation in the amount of $112.00 per week, two-thirds (2/3) of the plaintiff's weekly earnings, for twenty-three (23) weeks, the time between the mugging incident and plaintiff's application for unemployment benefits. The trial court thus concluded that Mr. Stewart suffered total, but temporary, disability. This conclusion, regarding the extent of Mr. Stewart's disability, was reached by determining that Mr. Stewart's disability resulting from the work-related mugging trauma ended upon his applying for unemployment benefits, and that his current disability was not work-related.[2] The plaintiff argues on appeal that the trial court was in error, and that he should have been awarded worker's compensation for total and permanent disability. We agree with the plaintiff.
First, the hearing officer was in error for concluding that "the claimant was disabled from the injuries due to the accident until he certified that he was able to return to work five months after the accident." This conclusion was based on the plaintiff's testimony during which the hearing officer asked the plaintiff if he certified that he was able to work when he applied for unemployment compensation. The plaintiff was unsure in his answer. The hearing officer, in his reasons for judgment, noted this confusion in Mr. Stewart's testimony.
he (the plaintiff) testified that he returned to work four or five months after the accident and was told to apply for unemployment compensation. He applied for unemployment compensation five months after the accident. Under the statute, an applicant for unemployment compensation must certify that he is able to work, available for work and looking for work. The plaintiff could not remember if he made this certification.
The hearing officer's reasoning is thus inconsistent. He initially states that the plaintiff could not remember whether he certified he was able to work, but then *688 concludes that the plaintiff was disabled up to the time of his certification. Given the fact that the plaintiff's recollection of whether he certified to an ability to work was tenuous at best, and that the plaintiff clearly indicated during his testimony that he did not understand the procedures required for receiving benefits and was only following the instructions of his employer and the unemployment compensation office, we believe the trial court was in error for using the date of plaintiff's application for unemployment benefits to determine the extent of Mr. Stewart's disability. This Court has before stated that "the evidence of the (unemployment compensation) application must be considered along with all the other evidence, but it does not in itself preclude plaintiff from receiving benefits at the time he was applying for the unemployment compensation benefits." Jackson v. New Orleans Public Service Inc., 386 So.2d 1049, 1050 (La.App. 4th Cir.1980). There was no evidence presented at the hearing to indicate that Mr. Stewart was able to work when he applied for unemployment compensation. Furthermore, Mr. Stewart testified that he never received unemployment benefits for the very reason that he was unable to work. The use of this date is wholly unsupported by the record, and the trial court was therefore in error for using the application date in determining the nature and extent of Mr. Stewart's disability.
Second, we believe, after considering the findings of the hearing officer, that the trial court should have awarded compensation for total and permanent disability.
In order to receive compensation for permanent and total disability, the claimant must show by clear and convincing evidence that a work-related injury or infirmity renders him unable to work in any employment. LSA-R.S. 23:1221(2)(a) and (2)(c); Franklin v. Pizza Hut, Inc., 572 So.2d 685, 688 (La.App. 4th Cir.1990); Stewart v. Ormond Country Club, 542 So.2d 658 (La.App. 5th Cir.1989); writ den., 544 So.2d 408 (La.1989). The claimant is entitled to receive such benefits even when the work-related accident is not the sole cause, but only a contributing cause, of the disability. Our Supreme Court, as well as other Louisiana courts, has held that a claimant may recover even if a pre-existing condition would have eventually created the disability, so long as "a work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed." Walton v. Normandy Village Homes Association Inc., 475 So.2d 320, 324 (La.1985); reh. den. (October 1985); Houston v. Kaiser Aluminum and Chemical Corp., 531 So.2d 1129 (La.App. 4th Cir.1988); Malloy v. AT & T Consumer Products, 475 So.2d 80 (La.App. 2d Cir. 1985). It is well settled law in Louisiana that an employer takes his worker as he finds him, and that where a work-related accident or injury might have little effect on a healthy worker, the employer is liable for worker's compensation for whatever disability results in the claimant from a work-related injury or illness. Hill v. L.J. Earnest Inc., 568 So.2d 146, 153 (La.App. 2d Cir.1990), writ den., 571 So.2d 652 (La. 1990); Hughes v. Royal Globe Ins. Co., 496 So.2d 1241 (La.App. 5th Cir.1986), writ den., 497 So.2d 1388 (La.1986); Achord v. H.E. Weise Construction Company, 422 So.2d 1248 (La.App. 1st Cir.1982); reh. den. (December 1982).
In the present case, both of the physicians who examined the claimant testified that the mugging incident exacerbated his pre-existing diabetes and arthritis to create the disability Mr. Stewart was currently suffering at the time of the hearing. Furthermore, both physicians stated that Mr. Stewart would not be able to return to any type of employment. The hearing officer agreed with the findings of the physicians:
The plaintiff has a great deal of pathology. The neurologist, Dr. Susan Boston, testified by deposition that she diagnosed diabetes, heart disease, and degenerative arthritis in his neck and extremities. She also said that the trauma would have aggravated his pre-existing arthritic condition.

*689 Dr. Joseph Braud testified on behalf of the plaintiff. He also noted the pathology and opined the plaintiff could not return to gainful employment.[3]
The hearing officer thus concluded that the trauma of the mugging exacerbated plaintiff's pre-existing infirmities rendering him totally unable to seek employment, that the plaintiff suffered a disability at the time of the hearing, and that the plaintiff would not be able to work in the future. While the hearing officer agreed that the plaintiff was totally and permanently disabled, he concluded that the current disability was "due to disease and a degenerative condition not work-related." However, neither physician in this case, nor any evidence presented at the hearing, indicated the existence or emergence of any new illnesses after the mugging incident. We find no support in the record for the hearing officer's conclusion that Mr. Stewart's current disability is not work-related. The "disease and degenerative condition" which the hearing officer associated with the plaintiff's current disability are the diabetes and arthritis which the hearing officer earlier concluded was aggravated by the trauma of the mugging. We therefore find that the plaintiff fulfilled his burden of proving by clear and convincing evidence that the work-related injury aggravated and/or combined with his pre-existing condition to produce a total disability which prevented him from ever working again. The plaintiff thus shall be awarded worker's compensation for total and permanent disability. The employer shall continue payments of $112.00 per week for the duration of Mr. Stewart's disability. See LSA-R.S. 23:1221(2).
The plaintiff further argues on appeal that he should have additionally been awarded penalties and attorney fees. The trial court never addressed this issue. Penalties may awarded under LSA-R.S. 23:1201(E) when compensation is not paid within the time frame set forth by subsections LSA-R.S. 23:1201(B), (C), and (D).[4] If the employee's rights to compensation are not reasonably controverted, and if the employer was able to make payments, then "there shall be added to such unpaid instalment a penalty of an amount equal to twelve percent thereof." LSA-R.S. 23:1201(E). Reasonable attorney fees may be awarded if the employer fails to make payments within sixty days of notice of the employee's injury, if such failure is arbitrary, capricious, or without probable cause. See LSA-R.S. 23:1201.2.
In this case, the employer was notified about the mugging and Mr. Stewart's injuries shortly after the accident. The employer never paid any compensation benefits. Rather than paying disability compensation, the employer sent Mr. Stewart to apply for unemployment compensation. We believe such actions were arbitrary and without probable cause. Because the employer did not pay benefits as instructed by LSA-R.S. 23:1201, and because his actions were arbitrary and without probable cause, the plaintiff is entitled to penalties in the amount of twelve percent (12%) of the compensation awarded which had not been paid at the time the hearing plus reasonable attorney fees incurred in obtaining his rightful compensation. After a review of the record, and after a careful consideration of the amount of time and effort in bringing this action to secure Mr. Stewart's worker's compensation, we believe $2500 is *690 an appropriate amount for Mr. Stewart's legal expenses.
For the foregoing reasons, the judgment of the trial court assessing liability for worker's compensation against the employer is affirmed and amended to require the employer to pay compensation benefits for total and permanent disability in the amount of $112.00 per week beginning from the time of the mugging incident and continuing for the duration of the claimant's disability. The employer is further ordered to pay penalties in the amount of twelve percent (12%) of the compensation awarded up to the time of the hearing and attorney fees in the amount of $2500.
AFFIRMED AND AMENDED.
SCHOTT, C.J., dissents.
SCHOTT, Chief Judge, dissenting:
I respectfully submit that my colleagues have erred because they have misread and misinterpreted Mundy v. Dept. of Health & Human Resources, 593 So.2d 346 (La. 1992) which clearly requires a reversal of the award of compensation benefits in the subject case.
In the Mundy case a nurse employed by Charity Hospital was on the elevator in the hospital going to her workstation when she was attacked by an assailant. She was expected to report for work no later than 11:20 p.m. and arrived at the hospital at 11:17 p.m.. The court found that the accident did not occur in the course of employment and arise out of the employment.
In the present case, the employee had just gotten off a bus and was over two blocks from the place of his employment when he was attacked. This scenario is very much like the one in Mundy except that Mundy's facts are much stronger in support of a conclusion that the accident was compensable than the present case.
The quoted portion of the Mundy decision in the majority opinion provides no support for the opinion. As that quotation says, the threshold doctrine involves a risk different from the risks to which the general traveling public is exposed or is more aggravated in the area adjacent to the employer's premises than elsewhere. In the present case, of course, we are not even talking about the area adjacent to the employer's premises, but a place on a public street at a bus stop over two blocks away. But even if that could be considered the "threshold" of employment like the elevator in Charity Hospital, the risk of being mugged there was no greater than almost anywhere else in the City of New Orleans or at least no greater than within a two mile radius of the place where plaintiff was attacked. The next sentence from the Mundy quotation: Even if the risk which gave rise to the injury could be considered as a defect hazardous to travelers immediately adjacent to the employer's premises (which this was not in the instant case, but over two blocks away from those premises), the risk was no more dangerous in the immediate vicinity of the employer's premises than elsewhere along her route of travel to work. Unfortunately for this employee, he was at the same risk of being mugged from the time he left his house until he would get inside the employer's premises. The majority opinion recognizes this fact with the statement:
"No matter which route he took from the bus stop to the bakery, he still would have had to walk through the same high crime area ..."
This is precisely why Mundy precludes recovery.
The majority opinion also erroneously states: "In each of these cases, the final disposition of the case relied heavily on whether facts were determined by the initial trier of fact which established that the employee was exposed to a greater risk than the general public that was peculiarly related to the employment." This statement immediately follows the discussion of and quotation from the Mundy case. In that case the trial judge made no such determination of fact. He found only the plaintiff "had not come under the control or supervision of Charity Hospital." That was not the basis for the Supreme Court's decision that the accident was not compensable. In the same way the factual findings of the Hearing Officer do not support *691 his conclusion. In this case he reached the wrong conclusion as a matter of law. In fairness to the Hearing Officer, he did not have the benefit of Mundy when he decided the case. We do, and we are bound to follow it. A dismissal of the suit is clearly mandated by Mundy.
NOTES
[1] LSA-R.S. 23:1317 states in pertinent part:

... The hearing officer shall not be bound by the technical rules of evidence or procedure except herein provided, but all findings of fact must be based upon competent evidence ...
[2] The hearing officer concluded his reasons for judgment, stating

Having weighed all of the evidence, the Hearing Officer believes that the claimant was disabled from the injuries due to the accident until he certified that he was able to return to work five months after the accident. The Hearing Officer also believes that any other disability is due to disease and a degenerative condition not work-related. There will be a judgment accordingly.
[3] The hearing officer did go on to comment that Dr. Braud's "report was filed into the record wherein he said that the plaintiff was `partially, totally disabled,' a conclusion which is inconsistent." We acknowledge the inconsistency with this statement and the doctor's conclusions in his testimony and the rest of his report which clearly opine that the claimant would not be able to return to work. Such an inconsistency might justify the court's conclusion that Mr. Stewart suffered a total, but temporary, disability. However, the hearing officer found as a matter of fact that Mr. Stewart was still disabled at the time of the hearing and that he would not be able to return to gainful employment due to his exaggerated pre-existing arthritis and diabetes. This conclusion by the hearing officer warrants a finding of a total and permanent disability, not a total and temporary disability.
[4] Under LSA-R.S. 23:1201(B), compensation payments for total, temporary or permanent, disability become due on the fourteenth (14th) day after the employer or insurer has knowledge of the injury.