# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 22-96


**BRETT BUCKNER**

**VERSUS**

**DIALYSIS CLINICS, INC. (DCI)**


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 9
PARISH OF ST. MARTIN, NO. 20-03535
ELIZABETH CLAIRE LANIER, WORKERS' COMPENSATION JUDGE

**********

**GARY J. ORTEGO**
**JUDGE**

**********

Court composed of Billy Howard Ezell, Jonathan W. Perry, and Gary J. Ortego, Judges.


**AFFIRMED AS AMENDED AND RENDERED.**

**Mark Louis Riley**
**The Glenn Armentor Law Corporation**
**300 Stewart St.**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Brett Buckner**

**John J. Rabalais**
**Megan C. Gladner**
**Rabalais Unland, LLP**
**70779 S. Ochsner Blvd**
**Covington, LA 70433**
**(985) 893-9900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Dialysis Clinics, Inc. (DCI)**

**ORTEGO, Judge.**

In this workers' compensation matter, the employer, Dialysis Clinics, Inc. (DCI), filed this appeal and argues that the Workers' Compensation Judge (WCJ) manifestly erred in finding that the factual evidence presented justified awards to the Claimant, Brett Buckner (Buckner), workers' compensation benefits, medical benefits, statutory penalties, and attorney fees. Claimant, Buckner, answered the appeal. For the following reasons, we affirm the WCJ's judgment, in part, amend in part, and render.

## FACTS AND PROCEDURAL HISTORY

Defendant, DCI, owns several dialysis clinics in Louisiana. Claimant, Buckner, a registered nurse, had been employed by DCI as a supervising nurse manager in its dialysis clinic in New Iberia since November 4, 2019. On the date of this incident, April 25, 2020, Buckner had pre-existing, but non-disabling injuries that required him to use a knee scooter for assistance to move physically and perform his duties with DCI. DCI had made the recommended work modifications to accommodate Buckner's continued employment at this clinic.

This workers compensation proceeding stems from an unwitnessed accident Buckner alleged occurred at about 3:15 p.m. on Saturday, April 25, 2020, when he fell out of his knee scooter in the back water room. Buckner testified that he was en route to confirm that a timing mechanism associated with the clinic's carbon filtration system was still operating correctly. This carbon filtration system removes chlorine from the city's water supply and is vital to the safe operations of the clinic, and DCI's services to their clinic patients' dialysis needs.

The record reflects this was the second time that day that Buckner inspected the timing mechanism. During the first inspection, Buckner was accompanied by a supervisor, Karen DeMahy, at her request. For the second inspection, Buckner performed the inspection alone. After his fall, and while still lying on the floor,

Buckner used his cell phone to call for assistance and to report this incident to his supervisor.

Shortly after the incident, and at the instructions of Operations Director Kimberly LeBlanc, DCI site charge nurse, Karen DeMahy, called the ambulance for Buckner, and Buckner was then transported to Lafayette General Hospital.

The evidence shows that Buckner typically would not have been working that day, however, by agreement with his supervisor, Ms. LeBlanc, Buckner worked that day to make up the hours he previously missed to receive medical care for conditions predating this accident.

According to Buckner's testimony, this accident and his resulting injuries occurred on April 25, 2020, when the front wheels of his knee scooter locked after hitting an uneven surface and grate area in the water room, throwing him over the handlebars of his scooter, with him landing forehead first on the floor.

DCI did not believe Buckner's account of this accident and refused to provide indemnity or medical benefits. Buckner filed an LWC-WC-1008, Disputed Claim for Compensation form, on June 10, 2020. Following discovery, the parties presented testimony and evidence at trial, including the testimony of Buckner and Karen LeBlanc, along with medical evidence, over the course of two days, July 20, 2021, and August 3, 2021. After receiving post-trial briefs, on September 17, 2021, the WCJ rendered Judgment finding that Buckner met his burden of proof in establishing that he suffered an accident while acting in the course and scope of his employment on April 25, 2020, and that as a result of the accident, claimant suffered a right foot injury, a cervical spine injury, and an aggravation of a pre-existing low back injury, along with Buckner establishing that the medical treatment and surgery for his right foot, and C5-6, C6-7 surgery, were likewise causally related to this work accident.

2

The WCJ's Reasons for Judgment likewise ordered that DCI reimburse claimant's health insurer, Blue Cross, 100% for any expenses falling within its definition as workplace related, and certain expenses advanced by Buckner and his counsel, with compensation benefits from the date of the workplace accident forward, along with penalties, attorney fees and all costs.

## ASSIGNMENTS OF ERROR

On appeal, DCI assigns and alleges that the WCJ committed several manifest errors, in the following order:

I. Finding that Claimant met his burden of proving an unwitnessed work accident in the course and scope of employment.

II. Finding that Claimant met his legal burden of proving injury and disability, including after April 25, 2020.

III. Not finding the Claimant committed fraud.

IV. Finding that Claimant is entitled to penalties, attorney fees, costs including reimbursement for out-of-pocket medical expenses, and judicial interest.

## LAW AND DISCUSSION

*Standard of Review*

In Louisiana:

> The manifest error standard of review is the correct standard to be applied by the appellate court in workers' compensation cases. *Dean v. Southmark Construction*, 03-1051 (La 7/6/04), 879 So.2d 112. Thus, the WCJ's findings will not be set aside absent a showing that they are clearly wrong. *Alexander v. Pellerin Marble & Granite*, 93-1698 (La 1/14/94), 630 So.2d 706. "The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Blake v. Turner Industries Group, LLC*, 12-140, p. 6 (La.App. 1 Cir. 9/21/12), 111 So.3d 21, 25.

*Young v. CB&L, LLC*, 20-619, p. 4 (La.App. 3 Cir. 10/27/21), 329 So.3d 905, 909.

3

"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (*citing Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978)).

We will utilize the manifest error standard to review the errors assigned by Appellant as to the WCJ's findings that Claimant established that he was injured by an accident, and that accident arose in the course and scope of his employment.

## I. ACCIDENT OF APRIL 25, 2020

### A. *Unwitnessed Accident*

DCI's first argument is that Claimant failed to establish that an on-the-job accident occurred on April 25, 2020.

As in all workers' compensation cases, claimant, Buckner, has the burden of proving the occurrence of a work-related accident by a preponderance of the evidence. *Bartley v. Schlumberger Tech. Co.*, 16-538 (La. App. 3 Cir. 12/7/16), 209 So.3d 123, 126–27; *Sorile v. Lott Oil Co., Inc.*, 14–1156 (La.App. 3 Cir. 3/4/15), 160 So.3d 178.

With respect to an unwitnessed accident, the manner in which this burden can be met is clearly established in the jurisprudence.

> An employee can prove an unwitnessed accident with her testimony alone if "(1) no other evidence discredits or casts serious doubt upon [her] version of the accident; and (2)[her] testimony is corroborated by the circumstances following the alleged incident." *Marange [v. Custom Metal Fabricators, Inc.*, 11–2678, p. 6 (La. 7/2/12)], 93 So.3d 1253 [,1257]. The "employee's" testimony may be corroborated by the testimony of coworkers, spouses, or friends, or by medical evidence. *Ardoin v. Firestone Polymers, L.L.C.*, 10–245 (La. 1/19/11), 56 So.3d 215 (citing *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992)). The WCJ's determinations that an employee is credible and that she satisfied her burden of proof are factual determinations that should not be disturbed by a reviewing court unless the determinations are "clearly wrong absent a showing of manifest error." *Bruno*, 593 So.2d at 361.

4

*Franklin v. Calcasieu Parish Sch. Bd.*, 12–1032, p. 2 (La.App. 3 Cir. 2/6/13), 108 So.3d 907, 909 (first, second and fourth alterations in original).

Additionally, an appellate court cannot reverse a WCJ's factual findings that are based on a reasonable credibility evaluation if the record "furnishes [a] reasonable factual basis for the trial court's finding." *Marange*, 93 So.3d at 1258 (quoting *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973)).

When, as here, "there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable[,]" and "even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Housley v. Cerise,* 579 So.2d 973, 976 (La.1991) *(quoting *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La.1990)).

In our case, the WCJ considered the evidence presented by both parties, stating and finding as follows:

> Clearly the employer did not believe that there was an accident. They stated that several times. The employer stated under testimony that she could not basically fathom that an accident could have happened. And this Court disagrees. There were a few of the mechanics of how it happened, but this Court's conclusion is that it did happen. And sometimes when people recollect events, there are different versions. And that doesn't necessarily discredit that an accident happened. Especially if you look at Dr. Grazzaffi and the records associated with his evaluations. He reported that, "There was now a separation noted at the first MPJ arthrodesis site compared to the last visit x-ray. That there was a fracture break of the partially fused area of the right first MPJ. The hallux is now sublux dorsally 48 degrees."

The WCJ concluded that Buckner established that an accident occurred that date and that it occurred while he was acting in the scope of his employment. We find that the record provides sufficient evidence for the WCJ to have reached these conclusions.

5

Applying the manifest error rule, we see no basis to second guess the trier of fact, who observed the demeanor of all of the witnesses at trial and found Buckner's testimony "credible." Additionally, as the WCJ observed, Dr. Grazzaffi's report shows that he "identified a change from the prior condition", as to Buckner's pre-existing conditions.

DCI argues that the alleged accident occurred one day after Buckner informed his supervisor that he no longer wanted to work in his position. Although Buckner freely acknowledged that this assertion is true, this admission alone does not demand that we reject the WCJ's finding that a compensable workplace accident had occurred, especially given the corroborating medical evidence presented for consideration.

Additionally, and as stated by the WCJ:

> You can look to [*Bruno versus Harbert*] regarding unwitnessed accidents and the circumstances surrounding the validation that an accident occurred in any of the medical records. Mr. Buckner reported to Dr. Grazzaffi just a few days after the accident that he fell over the weekend and the pain has increased. He wanted a doctor to take a look at it and the doctor actually saw abrasions to the foot. He reported to Dr. Jayme Trahan that he had an accident.

The record further shows that Dr. Trahan also determined that an accident had occurred, and as noted by the WCJ, so did Dr. Juneau, stating and finding:

> Dr. Juneau regarding the neck talked about, under "Impressions," in the middle of the last paragraph, "I think that the accident that occurred on 4/25/20 precipitated the onset of symptoms of his cervical spondylic radiculopathy."

Clearly, there is a reasonable factual basis in the record in support of the findings of the WCJ, and therefore, we conclude that the WCJ did not manifestly err. Therefore, this assignment of error is without merit.

6

## B. *Course and Scope*

Next, DCI argues if the accident did occur, it did not occur while Buckner was acting in the course and scope. According to DCI, Buckner's job duties did not extend that day to maintaining carbon filtration in the "water room," but rather were limited to admitting two dialysis clinic patients.

On cross examination, Buckner repeatedly refused to concede that screening patients was the limit of his responsibilities on the date of the accident. This exchange is illustrative (emphasis added):

> Q. Mr. Buckner, I'd like to show you a text message that says, "Kim, I woke up at 2:30 this a.m. with some GI issues. I've been fighting it all day. I've been drinking all day but my BP is 62/45. I have done the care plan alert and some notes. I have a doctor's appointment at ten tomorrow for x-rays and MRI. If I can leave today, come in at five tomorrow and leave at nine, I can come in Saturday to screen patients and make up my hours."
>
> A. *And make up my hours.*
>
> Q. Did you send this text message, Mr. Buckner?
>
> A. I did.
>
> Q. Do you not say in this text message to come in and screen patients?
>
> A. *And make up my hours*. You said was I solely there to screen patients? *Screening patients only takes about 30 minutes per shift, so I had to put[sic] make up the 8 hours doing something else. That's why I put, "and to make up my hours."*

The WCJ heard this contradictory testimony and was obviously persuaded by Buckner's testimony that he was acting within the course and scope of his employment.

Louisiana jurisprudence states:

When a fact finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can

virtually never be manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Id.* The trier of fact's determinations as to whether the worker's testimony is credible and whether the worker discharged the burden of proof are factual determinations, not to be disturbed upon review unless clearly wrong. *Smith v. Cappaert Manufactured Hous., Inc.,* 11-1464 (La.App. 3 Cir. 4/10/12), 89 So.3d 1234, *writ denied,* 12-1418 (La. 10/8/12), 98 So.3d 857.

*Simpson v. Gaspard*, 21-762, pp. 5-6 (La. App. 3 Cir. 5/18/22) 339 So.3d 718, 722.

Buckner testified that his job responsibilities were broader, encompassing supervision of all clinic operations, including the chlorine filtration system whose successful operation was vital to the clinic's core mission.

The WCJ plainly found Buckner's account convincing, finding:

Also, the Court finds that the employee had an accident in the course and scope and arising out of his job duties. The Court finds that the job description of what the requirements are of the nurse case manager encompasses his activities that day. Not just with screening patients but checking out the timing mechanism even though the timing mechanism was adjusted earlier that day, it was still reported to Mr. Buckner that there had been a problem.

As a supervisor, one is supposed to double check and one is supposed to, if you want to use the phrase, trust but verify. You trust that it's taken care of but you double check. And so that action was withing the ambit of the job duties. It's conceived that he could do that, to go into the water room to check the timer.

The employer argued that he was only supposed to be there to screen patients. But as a supervisor, different things happen that require your attention. And just because you have intent to do one task, as a manager, other things come your way. That just happens in life. And when an issue is reported, it is actually incumbent upon a manager to double check and to make sure everything is order. So this Court finds that it was within the ambit of the job duties for Mr. Bucker to check the time[r] and be in the water room.

In its well-reasoned ruling, the WCJ found "that there was sufficient documentation to support that there was an accident within the course and scope and arising out of Mr. Buckner's job duties." Therefore, we decline to second guess the trier of fact on this issue.

In view of the foregoing, we conclude that the WCJ was not clearly wrong in determining that this accident occurred while Buckner was acting in the course and scope of his employment, and thus find this assignment of error has no merit.

## C. *Injury and Disability*

DCI also contests the WCJ's findings that Buckner was injured and became disabled as a result of the workplace accident. We find these contentions lack merit.

Again, we cannot say that the WCJ manifestly erred, given Buckner's testimony, along with the corroborative objective medical evidence that was presented at trial. As noted by the WCJ, shortly after the event, Dr. Grazzaffi observed abrasions to Claimant's foot, plus other new injuries Buckner did not previously have, as did Dr. Juneau and Dr. Trahan. In the reasons for judgment, the WCJ refers specifically to Buckner's medical treatment and medical documentation:

> Dr. Juneau regarding the neck talked about, under "Impressions," in the middle of the last paragraph, "I think that the accident that occurred on 4/25/20 precipitated the onset of symptoms of his cervical spondylic radiculopathy. He has tried conservative treatment, but his symptoms persist. Thus, I think that the patient is a candidate for an anterior cervical discectomy with instrument infusion at C4-5, C5-6, C6-7 at this point."
>
> And in the last paragraph he states further, "However, I think that accident on 4/25/20 brought about the onset of symptoms of spondylic radiculopathy, therefore causally connected to his present need for surgery on the cervical spine."
>
> ….

9

Dr. Trahan was very specific about the changes that occurred to the neck and the back. He talked about the need for a neck surgery due to the compression on the neck, and that it showed neurological worsening in his motor function of his arms correlating to the compression of his neck.

Therefore, we find that the WCJ properly found that Buckner carried his burden of proof as "he has identified a change from his prior condition."

Given the evidence contained in the record, we decline to reverse the WCJ's findings that Buckner was injured by this workplace accident, and that same resulted in new and aggravated injuries.

Defendant also argues that the WCJ manifestly erred by finding that Claimant had become disabled from the April 25, 2020, accident. Again, we disagree and find no merit to this argument.

The evidence provided by Claimant's treating physicians provided the WCJ with a reasonable basis to conclude that Claimant had been temporarily totally disabled by this accident through the date of his trial, and beyond that date as to his C5-6 and C6-7 injuries, which did require surgery, along with the WCJ's finding: "And then Dr. Trahan talked about six to twelve months of recuperation after the cervical surgery."

After reviewing the record, we are not persuaded that the WCJ's findings of disability were clearly wrong as to this accident of April 25, 2020. "In *Walton v. Normandy Village Homes Assoc. Inc.*, 475 So.2d 320, 324 (La.1985), the supreme court held that a [p]re-existing disease or infirmity of the employee does not disqualify a claim if the work injury aggravated, accelerated, or combined with the disease or infirmity to produce...disability for which compensation is claimed." *Trimble v. HADCO Servs., Inc.*, 93-1465 (La.App. 3 Cir. 6/1/94), 640 So.2d 645, 648.

For these reasons, we find this assignment of error to be without merit.

10

### D. *Fraud*

Although not previously specifically pled by DCI, DCI next argues that the WCJ manifestly erred by failing to find fraud on the part of the Claimant in this proceeding.

The WCJ evaluated the evidence and conflicting testimony presented by both parties, including Claimant and DCI's witnesses, along with the medical records and documentation, before concluding that there was in fact a compensable, non-fraudulent accident that resulted in compensable injuries. Specifically, the WCJ found and ruled:

> It appears that the employer without saying it, felt that it was either staged or was a sham accident. But this Court does not believe that. I think it was a series of unfortunate events with this claimant. And it just appeared with all the documentation, that there was an accident.

This court having already found no basis to reverse the WCJ's findings that an on-the-job accident occurred; we likewise find no basis to conclude that Buckner committed fraud. In this case, based upon the record, we find that Buckner satisfied his burden of proof that there was in fact a compensable, non-fraudulent accident that resulted in compensable injuries which were causally related to the accident of April 25, 2020.

## II. THE ISSUES OF REIMBURSEMENT/COSTS

Defendant also appeals the WCJ's calculations of the award of medicals, unpaid medical bills, other cost and expenses advanced by Claimant's counsel. Defendant argues that the WCJ's calculations of out-of-pocket medical expenses of $2,894.01 "if these are costs are paid by the Claimant," along with $1,668.00 paid by Claimant's counsel, and $12,484.00 for medical treatment and costs, are

not supported by the evidence in the record. Although Buckner argues that the record supports the WCJ's award of costs and expenses, to counsel for Buckner did concede during oral arguments before this court that the WCJ miscalculated the amounts of those awards. This court agrees.

A review of the record supports the Defendant's argument that the WCJ did in fact err in its calculations of the amounts awarded to the claimant for his out-of-pocket medical expenses and other costs, which were properly awarded by the WCJ. Thus, we find that the WCJ properly awarded the claimant's out-of-pocket medical expenses, costs, and other reimbursements, as it directly relates to claimant's injury, treatment and disability, however, we find that the WCJ was manifestly erroneous in her calculations of said awards.

Therefore, the WCJ's judgment and calculations of claimant's reimbursement for his actual out-of-pocket costs, expenses and reimbursements is amended, and we find and render these awards to claimant as follows:

1. $2,238.78 for Dr. Trahan;
2. $2,230 for Dr. Venable/Recovery Chiropractic;
3. $934.97 for Dr. Wyble;
4. $320.08 for Southern Spine;
5. $471.00 for Dr. Gillespie/Conservative Medical Management;
6. $2,894.01- Buckner's portion of bills partly paid by Blue Cross Blue Shield of Louisiana (his private medical insurer);
7. $2,086.00 for copy, travel and similar expenses.

### III. PENALITIES, ATTORNEY FEES, AND COSTS

Finally, Defendant argues that the WCJ manifestly erred in awarding Claimant statutory penalties of $8,000.00, and attorney fees of $16,000.00.

The WCJ "has great discretion in the award of penalties and attorney fees, and [her] decision will not be disturbed unless it is clearly wrong." *Gray v. Premier Staffing*, 99-197, p.7 (La.App. 3 Cir. 6/2/99), 736 So.2d 340, 344. Additionally, "To reasonably controvert a claim, an employer must be 'engaged in a nonfrivolous legal

12

dispute or [possess] factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all, or part of the benefits allegedly owed." *Ortega v. Cantu Servs., Inc.*, 19-202, p. 8 (La. App. 3 Cir. 10/23/19), 283 So.3d 1024, 1031 (alteration in original) (quoting *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890).

In *Pete v. Quality Const. Specialists and Bridgefield Cas. Ins. Co.*, 09-642, pp. 6-8 (La.App. 3 Cir. 12/9/09), 25 So.3d 241, 245, *writ denied*, 10-41 (La. 3/12/10), 28 So.3d 1029, this court explained:

> The employer or insurer has a continuing duty to investigate the employee's claim and to assess factual information before the denial of benefits. *Penn v. Wal-Mart Stores, Inc.*, 93-1262 (La.App. 3 Cir. 6/15/94), 638 So.2d 1123, *writ denied*, 94-1835 (La. 10/28/94), 644 So.2d 651. Thus, a failure to investigate the employee's claim subjects the employer or insurer to penalties and attorney fees. *333 *McClendon v. Keith Hutchinson Logging*, 96-2373 (La.App. 1 Cir. 11/7/97), 702 So.2d 1164, *writ denied*, 97-2872 (La. 2/13/98), 706 So.2d 995. Moreover, "a workers' compensation claimant is entitled to an increase in attorney fees for time incurred in defending an employer's unsuccessful appeal." *Warren v. Maddox Hauling*, 02-733, p. 6 (La.App. 3 Cir. 12/4/02), 832 So.2d 1082, 1087, *writ denied*, 03-4 (La. 4/21/03), 841 So.2d 791.

See also, *Ryan v. Cajun Indus., L.L.C.*, 20-617 (La. App. 3 Cir. 11/3/21), 330 So.3d 324.

Under Louisiana's workers' compensation laws, the employer has an obligation to furnish necessary medication, medical and surgical treatment, and related mileage reimbursements. La.R.S. 23:1203. Supported by the evidence, DCI was found by the WCJ to have improperly refused to provide Buckner with workers'

13

compensation benefits or medical treatments related to this accident of April 25, 2020, as to his new and aggravated injuries.

> It is well settled law in Louisiana that an employer takes his worker as he finds him, and that where a work-related accident or injury might have little effect on a healthy worker, the employer is liable for worker's compensation for whatever disability results in the claimant from a work-related injury or illness. *Stewart v. Louisiana Plant Service, Inc.*, 611 So.2d 682 (La.App. 4th Cir.1992), *writ denied*, 616 So.2d 706 (La.1993).

*Trimble*, 640 So.2d at 648.

As we have previously found no manifest error in the WCJ's finding that claimant established that he suffered a compensable workplace injury while in the course and scope of his employment, we likewise conclude that Defendant is answerable for the legal consequences that flowed from it, including medical and indemnity benefits, and other costs, plus legal interest pursuant to La.R.S. 23:1201.3(A).

> "Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, pp. 8-9 (La. 12/1/98), 721 So.2d 885, 890. "In determining whether an employer's actions are arbitrary and capricious, the crucial inquiry is whether the employer can articulate an objective reason for terminating benefits at the time of the termination." *Doyal v. Vernon Par. Sch. Bd.*, 06-1088, p. 10 (La.App. 3 Cir. 2/7/07), 950 So.2d 902, 909, *writ denied*, 07-832 (La. 6/15/07), 958 So.2d 1190. "Where termination of worker's compensation is based on competent medical reports or evidence, it is not arbitrary and capricious." *Guillory v. City of Lake Charles*, 614 So.2d 165, 170 (La.App.3 Cir.), *writ denied*, 616 So.2d 700 (La.1993).

*Howard v. Rio Sol Nursing Home*, 21-824, p. 11 (La. App. 3 Cir. 6/15/22), 344 So.3d 216, 223.

14

In this case, the WCJ awarded a total of $8,000.00 penalties, being: $2,000.00 for DCI's failure to accept Buckner's claim as compensable, which resulted in Buckner's need to retain counsel; $2,000.00 for failing to initiate or authorize medical treatment; $2,000.00 for its failure to initiate indemnity benefits, and $2,000.00 for its failure to approve Buckner's cervical surgery. Additionally, the WCJ awarded Claimant $16,000.00 in attorney fees, "based on the amount of work that was done," assembling a "huge file," with "a lot of exhibits" and "a lot of work done by the parties pursuing this matter." The record furnishes no basis for this court to conclude that the WCJ was clearly wrong to sanction DCI for its failure to abide by the legal requirements established by the workers' compensation laws of Louisiana and the facts of this case.

## IV. ANSWER TO APPEAL

In response to DCI's appeal, Buckner filed an Answer to this Appeal, and seeks additional attorney fees and court costs, for work done on appeal.

"It is well-established that a workers' compensation claimant who is successful in defending an appeal may be entitled to an award of additional attorney fees." *Ryan,* 330 So.3d at 333 (citing *McCain v. Motel 6,* 19-653, p. 11 (La.App. 3 Cir. 3/4/20), 297 So.3d 136, 143, *writ denied,* 20-764 (La. 10/6/20), 302 So.3d 535).

Since Buckner was successful in defending this appeal, we award him an additional $5,000.00 in attorney fees for work done on appeal.

15

## **DECREE**

For the reasons set forth herein, the judgment of the Workers' Compensation Judge awarding Claimant, Brett Buckner, workers' compensation benefits, medical benefits, statutory penalties, and attorney fees is affirmed. The judgment of the Workers' Compensation Judge as to the calculations of the amounts awarded to Claimant, Brett Buckner, for his medical expenses, reimbursement, and costs is amended, and rendered as found and itemized herein above, and the Defendant, Dialysis Clinics, Inc., is to pay those appropriate amounts, consistent with this judgment. Additionally, Defendant, Dialysis Clinics, Inc., is ordered to pay Brett Buckner an additional $5,000.00 for attorney fees associated with this appeal. All costs of this appeal are assessed to Dialysis Clinics, Inc.

**AFFIRMED AS AMENDED AND RENDERED.**